DeCamp v. Hamma, Ex'r.

*derwood* v. *Ins. Co.*, 57 N. Y. 500; *Home Ins. Co.* v. *Lindsey*, 26 Ohio St. 348; May on Ins. 568, sec. 465; Flanders on Ins. 523, 526; 6 Cush. 342; 34 Barb. 213; 6 Phil. 252; 3 Gill, 176.

*J. H. & C. Bates*, contra.

---

A. & W. F. DeCAMP *v.* ANDREW HAMMA, EXECUTOR OF ZACHARIAS HAMMA.

In an action against the maker, by an indorsee of a negotiable promissory note, who purchased the same for a valuable consideration, before maturity, and without notice of any fraud or infirmity as between the original parties, the defendant is not liable where it is shown:

1. That at the time of signing and delivering the note, he was induced, by fraudulent representations as to the character of the paper, to believe that he was signing and delivering an instrument other than a promissory note.

2. That his ignorance of the true character of the paper was not attributable, in whole or in part, to his own negligence in the premises.

ERROR to the District Court of Greene county.

The original action was brought in the Court of Common Pleas of Greene county, by plaintiffs in error, as indorsees, against Zacharias Hamma, as maker of a promissory note, of which the following is a copy:

" $190. MIAMI, *July* 26, 1869.

" Three months after date I promise to pay to the order of A. B. Denning one hundred and ninety dollars, value received, with use.

" ZACHARIAS HAMMA."

Indorsed: " A. B. DENNING.".

The plaintiffs alleged, in their petition, that the note was executed and delivered by the defendant on the day of its date, and that it was afterward indorsed and transferred to them before maturity, and for a valuable consideration. The defendant answered, denying the execution and delivery of the note.

Pending the action, the defendant died, and after revivor as against the defendant in error, an amended answer was filed, the material allegations of which are as follows: " In addition to the statements made in the original answer, this defendant, as executor as aforesaid, says, that if said note was in fact signed by said decedent, it was signed by him in ignorance of its true character, and that such ignorance was induced by the fraudulent representations made by A. B. Denning, the payee of said note; that said note was nothing but a non-negotiable contract, appointing the decedent an agent for the sale of a corn harvester; that said note was signed by said decedent without any fault or negligence on his part, and not intending to sign a promissory note; and he further says that the plaintiffs are not *bona fide* purchasers of said note, and for value."

The cause being at issue, was submitted to a jury, who, under instructions, returned their findings upon particular questions of fact, stated in writing, as follows:

" SPECIAL VERDICT.—1. Ques. Did Hamma sign the promissory note in the petition described? Ans. Yes.

" 2. Ques. Did plaintiffs, before the maturity thereof,

DeCamp *v.* Hamma, Ex'r.

purchase the same *bona fide,* and for a valuable consideration ? Ans. Yes.

" 3. Ques. Was the note fraudulently obtained from Hamma by Denning, the payee? Ans. Yes.

" 4. Ques. Was the signature of Hamma to the promissory note obtained by fraudulent representations as to the character of the paper itself? Ans. Yes.

" 5. Ques. Was Hamma at the time of signing it ignorant of its real character, and had no intention of signing a note ? Ans. Yes.

" 6. Ques. Was he guilty of any negligence or want of ordinary care in affixing his signature thereto, or in not ascertaining the character of the instrument, or in any other respect? Ans. He was not.

" 7. Ques. What amount are plaintiffs entitled to receive, if entitled to receive at all ? Ans. Two hundred and thirty-nine dollars and sixty-one cents ($239.61).

" J. B. MONROE, *Foreman."*

Thereupon the court rendered a judgment in favor of the defendant, which was afterward affirmed by the district court.

It is assigned for error that these judgments were contrary to law.

*M. M. Gaunce,* for plaintiffs in error :

The assignments of error are :

1. The overruling the motion to select between two defenses.

2. The overruling of demurrer to the amended answer, and the giving judgment against plaintiffs upon the findings of the jury.

In support of the second assignment of error, I cite : Laws of Ohio for the year 1869, p. 93 ; Story on Prom. Notes, secs. 191, 192 ; *Davis* v. *Bartlett,* 12 Ohio St. 534 ; *Putnam* v. *Sullivan,* 4 Mass. 45 ; *Delabeler* v. *Bush,* 14 Ind. 70-76 ; *Phelan* v. *Moss,* 67 Penn. 59 ; *State Bank* v. *McCoy,* 69 Penn. St. 204 ; *Douglas* v. *Matting,* 29 Iowa, 498 ; *Calkins* v. *Whistler,* Ib. 495 ; *Lake* v. *Reed,* Ib. 258 ; *Park Bank*

v. *Watson*, 42 N. Y. 490 ; *Chapman* v. *Rose*, 56 Ib. 139 ; *Leach* v. *Nichols*, 55 Ill. 190 ; *Mead* v. *Munson*, 60 Ib. 49 ; *Citizens' Nat. Bank* v. *Smith*, 4 Am. Law Rec., No. 7, of January, 1876.

*Howes & Sabin*, for defendant in error.

McILVAINE, J.  Having shown that the signature to the note sued on was the genuine signature of Zacharias Hamma, and that it had been delivered as a complete instrument by the maker to the payee ; and also that it was afterward and before maturity, by indorsement and delivery, transferred to them for a valuable consideration, and without notice of any fraud or infirmity as between the original parties, the plaintiffs in error claim that the judgments below should have been in their favor, notwithstanding it was found by the jury that the maker was ignorant of the true character of the instrument, and did not intend to sign a promissory note, but was deceived, without any fault or negligence on his part, and induced to sign and deliver the same through the false and fraudulent representations of the payee as to the character of the instrument.

Unquestionably the plaintiffs, as indorsees in the usual course of business, should be protected against any defense on account of any fraud in the transaction which merely affected the consideration of the contract.  But the fraud here relied on as a defense affected the execution and delivery of the instrument itself.  The obligation of a negotiable instrument, like other writings obligatory, depends upon their due execution and delivery.  The delivery of such instruments, as a general rule, in order to create an obligation, must be voluntary.  And to be voluntary it is essential that the character of the instrument be known to the maker, as well as that the act itself should be intended by the party.  If the manual act of delivery be not voluntary, the instrument is a nullity, in whose hands soever it may come, unless the maker has so acted in respect thereto as to estop him from denying its validity.

As the voluntary act of delivering a negotiable instrument estops the maker from denying the consideration, or averring fraud in its procurement, as against a *bona fide* holder for value, so negligence or want of proper care in making and delivering an instrument will estop the maker from denying that he had knowledge of its true character. But where the maker is deceived as to the true character of the instrument signed and delivered, and the deception can not be attributed in whole or in part to his negligence or want of proper caution, there is no more reason why he should be obligated thereby, than if his signature had been forged.

It is true that, in determining whether proper caution was exercised in any particular case, the necessities and usages of trade and commercial intercourse in respect to the validity of negotiable paper in the hands of *bona fide* holders for value, must be considered. Such paper on its face shows that it is intended for circulation, and therefore great care should be taken that innocent holders of such securities may not be disappointed in their reasonable expectations.

Indeed, a recent author (Daniel on Negotiable Instruments, sec. 850) doubts whether there can be a case where a person who possesses the ordinary faculties and knowledge, and signs a bill or note upon the assurance that it is an instrument of a different kind, can be without such negligence as would bind him to 'a *bona fide* holder for value. It does not appear, however, in the case before us, that Hamma was a person possessing the ordinary faculties and knowledge, it being simply found in the special verdict that he was not guilty of any negligence or want of ordinary care. But in order that we may not be misunderstood in relation to the amount of care required in such cases, it is well to add that there can be no doubt that a person possessing the ordinary faculties, and being able to read and write, who relies solely on the representation of the other contracting party as to the character of the instrument, should be regarded as negligent as against an innocent indorsee before maturity and for value.

On this question there appears to be an unbroken line of recent decisions, both in England and in this country. The leading case, following a suggestion of Chief Justice Parsons in *Putnam* v. *Sullivan*, 4 Mass. 45, is *Foster* v. *Mackinnon*, 4 Law R. (C. P.) 704. Foster, to whom the bill had been indorsed before maturity, and without notice of any fraud, sued Mackinnon, a prior indorser. At the spring assizes, 1869, Bovill, C. J., instructed the jury that if the indorsement had the genuine signature of the defendant, and was obtained upon the fraudulent representation that it was a guarantee, and the defendant signed it without knowing it was a bill, and under the belief that it was a guarantee, and if the defendant was not guilty of any negligence in so signing the papers, he was entitled to a verdict. The verdict was for defendant. On a rule for a new trial, the instruction was held to be right. A new trial was awarded, however, on another ground.

Among the more recent cases is *Frederick* v. *Clemens*, 60 Mo. 313. The rule is thus stated : " Where one voluntarily signs a promissory note supposing it to be an obligation of a different character, but has full means of information in the premises, and neglects to avail himself thereof, relying on the representations of another, he can not set up such ignorance and mistake as a defense against an innocent holder for value before maturity. If, however, his signature was procured without negligence on his part, and through artifice or fraudulent representations, the rule is different, and the jury should be left under appropriate instructions to determine these facts."

The same general doctrine is maintained in the following cases, in some of which judgment was rendered in favor of the innocent holder and in others against him. But in all the test of right was whether or not the defendant had been guilty of negligence in not ascertaining the true character of the paper which he had signed. *Whitney* v. *Snyder*, 2 Sans. (N. Y.) 477; *Gibbs* v. *Linabury*, 22 Mich. 479; *Walker* v. *Egbert*, 29 Wis. 227; *Abbott* v. *Rose*, 62 Me. 194; *Chapman* v. *Rose*, 44 Howard (Pr.), 364, and the same case

in the court of appeals, 56 N. Y. 137; *Chipman* v. *Tucker,*
38 Wis. 43; *Cline* v. *Guthrie,* 42 Ind. 227; *Douglass* v. *Matting,* 29 Iowa, 498; *Briggs* v. *Ewart,* 51 Mo. 251; *Martin*
v. *Smyle,* 55 Mo. 577; *Corby* v. *Weddle,* 57 Mo. 452; *Shirts*
v. *Overjohn,* 60 Mo. 305; *Garrard* v. *Hadden,* 67 Penn. St.
82; *Bank* v. *Smith,* Supreme Court of N. H., reported in 4
Amer. L. Rec. 434; *Nance* v. *Lary,* 5 Ala. 370.

*Judgment below affirmed.*