98 N.E.2d 301 (1951)
155 Ohio St. 185
DICE
v.
AKRON, CANTON & YOUNGSTOWN R. CO.
No. 32414.
Supreme Court of Ohio.
Decided March 28, 1951.
*303 Wise, Roetzel, Maxon, Kelly & Andress, Akron, for appellant.
Gottwald, Hershey & Hatch, Akron, for appellee.
*304 TAFT, Judge.
The question to be decided is: May a trial court ordinarily determine the issue as to whether an employee of a railroad was induced by fraud (other than fraud in the factum) or by mistake to execute a release of his claim arising under the Federal Employers' Liability Act?
In considering the validity of releases and other contracts, this court has often called attention to the difference between fraud in the factum and fraud in the inducement. Meyer v. Meyer, supra; Picklesimer v. Baltimore & Ohio R. Co., 151 Ohio St. 1, 84 N.E.2d 214; Flynn v. Sharon Steel Corp., supra; Perry v. M. O'Neil & Co., 78 Ohio St. 200, 85 N.E. 41; De Camp v. Hamma, Ex'r., 29 Ohio St. 467, 470. See Manhattan Life Ins. Co. v. Burke, 69 Ohio St. 294, 70 N.E. 74, 100 Am.St.Rep. 666.
It has been held that, where there has been fraud in the factum, the release or other contract is void and may be disregarded as a nullity. Flynn v. Sharon Steel Corp., supra; Perry v. M. O'Neil & Co., supra; and De Camp v. Hamma, Ex'r., supra.
Plaintiff does not seriously contend that there was any evidence in the instant case to justify a finding of fraud in the factum. He apparently recognizes that there could be no such fraud in the instant case. Even if, as alleged in the amended reply, defendant did misrepresent to plaintiff the contents of the release and plaintiff executed the release in reliance upon that misrepresentation and in the belief that it was something else, plaintiff could admittedly read the release and there was no evidence that anything was done to prevent him from reading it. Plaintiff testified that he was told by defendant's employee that he would not have to read the release. This was denied by defendant's employee. However, there was no evidence tending to prove that plaintiff was denied an opportunity to read the release.
A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. De Camp v. Hamma, Ex'r, supra, 29 Ohio St. 471, 472. If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs. McAdams v. McAdams, 80 Ohio St. 232, 240, 241, 88 N.E. 542; Upton, Assignee, v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203. See Aetna Ins. Co. v. Reed, 33 Ohio St. 283, 292. If a person knows or has an opportunity to know the contents of a written contract or release which he signs, the facts, that such person does not comprehend its terms and that such failure to comprehend is due to fraudulent representations, may justify rescission of the contract or release on the ground of fraud in the inducement but will not justify a finding of fraud in the factum and treatment of such contract or release as void at law. See Cassilly v. Cassilly, 57 Ohio St. 582, 49 N.E. 795.
Where it is claimed that a release was induced by fraud (other than fraud in the factum) or by mistake, it is first necessary, before seeking to enforce a cause of action which such release purports to bar, that equitable relief from the release be secured. 45 American Jurisprudence, 711, Section 52. In such an instance, the issue, as to whether the person signing the release was induced to do so by fraud or by mistake, is an issue for determination by the court. Meyer v. Meyer, supra. See Perry v. M. O'Neil & Co., supra. While the court, in its discretion, may submit that issue to the jury under proper instructions, the finding of the jury in respect thereto is not binding upon the court. Flynn v. Sharon Steel Corp., supra. This was apparently the procedure followed in Thompson v. Camp, 6 Cir., 1947, 163 F.2d 396, one of the cases relied upon by the plaintiff. See, also, Radio Corp. of America v. Raytheon Mfg. Co., 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327.
In the instant case, the trial court did submit to the jury the issue as to whether the plaintiff was induced by fraudulent representations of the defendant or by mistake to execute the release. After the verdict of the jury, the court recognized its responsibility to determine that issue. The court *305 was not bound by the jury's finding on that issue for the plaintiff. There was substantial evidence to sustain the finding for the defendant made by the court on that issue.
However, plaintiff contends that the question, as to whether the release of an employee's claim under the Federal Employers' Liability Act should be set aside for fraud or mistake, must always be determined by the law as announced by the federal courts. In effect, this amounts to a contention that the law, with regard to releases of causes of action arising under the Federal Employers' Liability Act, differs from the law with regard to releases of other causes of action. In support of this contention, plaintiff relies upon certain decisions of the federal courts.
We believe that a careful examination of those decisions will clearly disclose that they were based upon a misinterpretation, made by two judges of the Second Circuit Court of Appeals in Ricketts v. Pennsylvania R. Co., 153 F.2d 757, 164 A.L.R. 387, of the decision by the Supreme Court of the United States in Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L. Ed. 239. This misinterpretation was subsequently rejected by the Supreme Court of the United States in Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 298, 92 L.Ed. 242.
Thus, in the opinion by Mr. Justice Jackson in that case it is said:
"Considerable reliance is placed upon a concurring opinion in the Court of Appeals for the Second Circuit in Ricketts v. Pennsylvania R. Co., 153 F.2d 757, 760, 164 A.L. R. 387. However persuasive the arguments there stated may be that inequality of bargaining power might well justify a change in the law, they are also a frank recognition that the Congress has made no such change. An amendment of this character is for the Congress to consider rather than for the courts to introduce. If the Congress were to adopt a policy depriving settlements of litigation of their prima facie validity, it might also make compensation for injuries more certain and the amounts thereof less speculative. But until the Congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.
"The plaintiff has also contended that this release violates § 5 of the Federal Employers' Liability Act which provides that any contract to enable any common carrier to `exempt itself from any liability created by this chapter, shall to that extent be void.' 35 Stat., 66, 45 U.S.C., § 55, 45 U.S.C.A. § 55. It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability, and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." (Emphasis added.)
That the Callen case represents a definite rejection by the Supreme Court of the United States of the Ricketts decision is emphasized by the dissenting opinion, stating that the dissenting judges, "being of the view that releases under the Federal Employers' Liability Act should be governed by the same rule which applies to releases by seamen in admiralty (See the separate opinion of Judge Jerome Frank, Ricketts v. Pennsylvania R. Co. * * *), dissent from an affirmance of the judgment."
The basis for the decision in the Ricketts case appears in a statement by Circuit Judge L. Hand in his opinion and in a statement by Circuit Judge Frank in his concurring opinion. Thus, it was said by Judge Hand, 153 F.2d at page 759: "The right of action here in suit was created by act of Congress, and it is abundantly settled that its interpretation is a matter of federal law and not governed by state decisions, even when it speaks in the words of the commonlaw. Chesapeake & Ohio R[y]. Co. v. Kuhn, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157. It would not inevitably follow that, after such a right had come into existence, the legal effect upon it of a transaction within a stateas here, of a releasewas also to be treated as matter of federal law; conceivably, *306 its fate might be left to the law of the state. However, as we read Garrett v. Moore-McCormick [McCormack] Co., [supra], this is not so. The right of action was there under the Jones Act, but the action had been brought in a state court, which had held that the burden of proof of establishing a release was governed by the law of Pennsylvania. This the Supreme Court denied, holding that the admiralty rule controlled; and it would seem to follow that the validity of the release at bar is to be decided by the common-law, to be gathered from the same sources which, before Erie R. Co. v. Tomkins [Tompkins] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we used to employ in cases depending on diversity of citizenship." (Emphasis added.)
It was said by Judge Frank, 153 F.2d at page 760: "The Supreme Court recently, in a case * * * relating to a release by a seaman, Garrett v. Moore-McCormick [McCormack] Co., 317 U.S. 239, at page 248, note 17, 63 S.Ct. 246, 87 L.Ed. 239, has broadly hinted that the courts should treat non-maritime employees, with respect to releases of personal injury claims, just as they treat seamen. I think we should take that hint * * *."
In Garrett v. Moore-McCormack Co., supra, it was pointed out that, under admiralty law, the releases of seamen stand on a different basis from that of releases of others; and that, in enforcing a cause of action of such a seaman under a federal act which a state court is given jurisdiction by that act to entertain, the state court necessarily has to recognize "the substantial rights of the parties under controlling federal law". [317 U.S. 239, 63 S.Ct. 251.]
As clearly pointed out in the Callen case, "the releases of railroad employees stand on the same basis as the releases of others." It would appear, therefore, that, so far as their releases are concerned, there are no substantial rights of railroad employees under controlling federal law. A release is merely a contract between the releasor and the releasee. As pointed out in the opinion of Mr. Justice Jackson in the Callen case, Congress has not undertaken to legislate with regard to the rights of railroad employees to make such a contract. Furthermore, as indicated by his opinion, there is no federal common law respecting the right of such an employee to make or avoid such a contract. Where the forum is the state where such a contract was made, there would appear to be no reason why the law of that state should not determine the rights of the parties with respect to an effort to avoid the contract.
Plaintiff apparently believes that the question, as to whether the issue of fraud in the making of a release shall be determined by a court or by a jury, involves a procedural problem. In support of his contention that such question should be answered by the federal law, he relies on the case of Brown v. Western Ry. of Alabama, 338 U. S. 294, 70 S.Ct. 105, 106, 94 L.Ed. 100, holding that rights granted by the Federal Employers' Liability Act could not be interfered with by certain rules of practice and procedure of a state court.
However, the question here is one of whether rights arising under an Ohio contract of release should or should not be recognized. It is not a question, as in the Brown case, relating to enforcement of rights under the Federal Employers' Liability Act. The latter question will not arise until the contract of release has been set aside. While, to use the words of Mr. Justice Black in the Brown case, a right provided for by the federal act "cannot be defeated by the forms of local practice", the Callen case recognizes that such right may be barred by a release; and that the federal law has not, as in the case of seamen, put such a release of a railroad employee on a basis different from that of other releases. To use the words of Judge L. Hand in the Ricketts case, "It would not inevitably follow that, after such a right [under the Federal Employers' Liability Act] had come into existence the legal effect upon it of a transaction within a stateas here, of a releasewas also to be treated as matter of federal law; conceivably, its fate might be left to the law of the state." We believe that the Supreme Court in the Callen case clearly indicated that its fate has been left to the law of the state.
*307 It has been suggested that the Callen case indicates that a jury must always be permitted to pass on all issues of fact in an action to enforce rights under the Federal Employers' Liability Act, apparently including those issues relating to the validity of a release of claims under that act. In that case, the trial judge, by what he said in his charge to the jury, took away from the jury any question as to the validity of the release, and his statements indicated that he did this on the ground that the burden was upon the railroad to prove the absence of mutual mistake or fraud with respect to the release. The employee in that case did not contend that the trial judge had the power to decide the question. Neither did the railroad. Probably the railroad ignored the question because the trial judge clearly indicated by what he said to the jury that any decision which he might have made would have been based upon his view that the burden of proof, with respect to the absence of fraud and mistake, was on the railroad.
Furthermore, a trial judge, who approached the decision of such a question with that view as to the burden of proof, could not make a decision, for which the employee could have argued, if, as it did, the Supreme Court placed upon the employee the burden of proof with respect to showing mistake or fraud.
In any event, the Supreme Court in the Callen case would certainly have said something to indicate any intention it had to announce that the rule of Erie R. Co. v. Tompkins, supra, did not apply to the trial of issues involving the validity of releases of claims arising under the Federal Employers' Liability Act. It said nothing to indicate such an intention but instead it stated that "releases of railroad employees stand on the same basis as the releases of others."
With respect to the burden of proof on this question in the federal courts, it may be observed that in the Callen case, the Circuit Court of Appeals, in reversing the District Court, stated that "evidence in order to void the release, had to be clear, unequivocal, and convincing." 3 Cir., 162 F.2d 832-833. This is the precise rule with respect to burden of proof adopted by the trial judge in his finding in the instant case. The decision of the Circuit Court of Appeals in the Callen case was affirmed by the Supreme Court of the United States.
Several of the other cases cited by plaintiff in support of his position, that the law with regard to releases of causes of action arising under the Federal Employers' Liability Act differs from the law with regard to releases of other causes of action, make no reference to the Callen case. Brown v. Pennsylvania R. Co. 2 Cir., 1947, 158 F.2d 795; Thompson v. Camp, supra; Irish v. Central Vermont Ry., Inc., 2 Cir., 1947, 164 F.2d 837. This is probably due to the fact that those cases were decided before or at about the time of the report of the Callen case. In all those cases, the conclusions, which tend to support this position of the plaintiff, were based upon the misinterpretation, made in the Ricketts case, supra, of the decision in Garrett v. Moore-McCormack Co., supra, which misinterpretation was rejected in the Callen case.
Those cases which support this position of the plaintiff and refer to the Callen case apparently fail to recognize the effect of the Callen case on their conclusion that the validity and avoidance of a release of rights arising under the Federal Employers' Liability Act are questions of federal law. See Graham v. Atchison, T. & S. Ry. Co., 9 Cir., 1949, 176 F.2d 819; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 1950, 178 F.2d 497; Kirchgestner v. Denver & R. G. W. R. Co., Utah 1950, 218 P.2d 685; Collett v. Louisville & N. R. Co., D.C.Ill.1948, 81 F.Supp. 428; Pacific Electric Ry. Co. v. Dewey 1949, 95 Cal.App.2d 69, 212 P.2d 255; Union Pacific R. Co. v. Zimmer, 1948, 87 Cal.App. 2d 524, 197 P.2d 363. We do not believe that those decisions represent a correct interpretation of the law, as announced by the Supreme Court of the United States in the Callen case.
Unless the Supreme Court of the United States announces a change in the law as announced in the Callen case, we are of the opinion, for the reasons hereinbefore stated, that, where the forum is a court of the state where a release of rights arising *308 under the Federal Employers' Liability Act was made, the law of that state may determine the rights of the parties with respect to an effort to avoid the release. Our conclusion, therefore, is that questions as to the legal effect upon a right under the Federal Employers' Liability Act of a release executed in this state and questions as to the avoidance of such a release are to be determined in the courts of this state by the law of this state.
The judgment of the Court of Appeals is reversed and the cause is remanded to that court for further proceedings in accordance with this opinion.
Judgment reversed.
WEYGANDT, C. J., and STEWART, MIDDLETON, MATTHIAS and HART, JJ., concur.
ZIMMERMAN, Judge (dissenting).
If I were satisfied that this case as to the release involved was governed by Ohio law, I would agree with the majority opinion. However, we are dealing here with an action brought under the Federal Employers' Liability Act and the Supreme Court of the United States has said that the rights and obligations of the parties in such an action depend upon that act and applicable principles of common law as interpreted by the federal courts. See Bevan v. New York, Chicago & St. Louis R. Co., 132 Ohio St. 245, 6 N.E.2d 982, certiorari denied, 301 U. S. 695, 57 S.Ct. 924, 81 L.Ed. 1351.
In the instant controversy the defendant railroad company sought to defeat plaintiff's action by reliance upon a purportedly complete release which plaintiff had executed and delivered to it. Plaintiff countered by claiming his signature to such release was induced and obtained by false and fraudulent representations and that the release was without binding effect.
Was the issue as to the validity of the release for the determination of the trial court upon the application of equitable principles as held by the majority of this court, or was the question one to be left to the jury as the trier of the facts?
Federal courts, which have dealt with the problem, have taken the position that, in an action under the Federal Employers' Liability Act, the validity of a release given by an employee to his employer is a substantive matter controlled by federal law, and that, where the employee makes the claim supported by evidence that the release was procured by fraud and misrepresentation, that issue must be submitted to the jury along with the other issues in the case. See Brown v. Pennsylvania R. Co., 2 Cir., 158 F.2d 795; Irish v. Central Vermont Ry., Inc., 2 Cir., 164 F.2d 837; Graham v. Atchison, T. & S. F. Ry. Co., 9 Cir., 176 F.2d 819; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497, and cases cited.
Unless and until the Supreme Court of the United States holds differently, my position is the same as that adopted by the Court of Appeals herein, and I would, therefore, vote to affirm the judgment of such court.