CARPENTER, APPELLANT, *v.* PONTIUS, APPELLEE.*

(No. 2993—Decided September 13, 1963.)

*Mr. C. E. Smart, Mr. Louis Berry* and *Mr. Morton Y. Reeves,* for appellant.

*Messrs. Day, Cope, Ketterer, Raley & Wright,* for appellee.

*Motion to dismiss motion to certify the record (38561) sustained, March 11, 1964.

RUTHERFORD, P. J. On March 28, 1958, approximately six months after her twenty-first birthday, the plaintiff commenced suit in Common Pleas Court. Her amended petition alleges that on April 30, 1947, when she was ten years of age, she was crossing Maple Street within an unmarked crosswalk, and that, when she reached a point near the center of the street, the defendant, who was driving an automobile in an easterly direction along Maple Street toward the place where plaintiff was crossing, negligently ran into and collided with the plaintiff injuring her. Following specific allegations of negligence, plaintiff alleges injuries caused by defendant's negligence, as follows:

1. A severe cerebral contusion with cerebral laceration and subdural hemorrhage.

2. Lacerations of the forehead.

3. Comminuted fracture through the frontal bone on right side of the skull.

4. Fracture on the left side of the skull.

5. Comminuted fractures of the anterior table of the frontal sinuses with depression.

6. Fracture of the base of the first metacarpal bone of the left hand.

7. Compound fractures of the nose with laceration.

8. A severance of the olfactory nerve with total loss of sense of smell.

9. A gouging laceration of the left eye and adjoining area with total loss of vision in the left eye.

10. An injury to the optic nerve with total loss of vision in the right eye.

The defendant filed an answer alleging negligence of the plaintiff, denying that plaintiff was injured in the manner or to the extent alleged in the amended petition and denying each and every allegation of the petition not admitted.

As a second defense the defendant alleges that in October 1947 Maude I. Carpenter made application to the Probate Court of Stark County, where Louise lived, to settle the minor's personal injury claim for the sum of $500 without appointment of a guardian, which settlement was approved by the Probate Court, and execution of release of all claims authorized. The sum of

$500 was paid to Maude I. Carpenter, mother and natural guardian of Louise, release of all claims was executed, and the settlement was confirmed by the Probate Court as evidenced by journal entry.

Defendant further alleges that such proceedings, orders, payment, release and confirmation constitute a complete and final discharge of the claims set forth and alleged in plaintiff's amended petition.

The plaintiff's second amended reply denies the allegations set forth in defendant's answer and continues:

"Further that on or before October 24, 1947, plaintiff says that defendant's agent induced plaintiff's mother to agree to appear before the Probate Court of Stark County and to sign applications and some forms of release on the fraudulent representation that it was a mere formality in order to pay the outstanding medical bills and the expenses, and that such settlement and release was not for the purpose of forever foreclosing plaintiff's rights.

"Plaintiff further alleges that her mother relied upon the representations and confided in and with defendant's agent, because she was ignorant in such matters and had she been advised that the payment, application and release was for other than her own expenses, and that plaintiff's rights would be forever barred, she would not have signed said application and release."

No action has been filed in the Probate Court of Stark County attacking the settlement proceedings in that court and the $500 has not been tendered back.

The Common Pleas Court proceeded to first separately try the issue raised by the second defense contained in the answer and the reply thereto. This issue of whether or not a settlement was effected was tried to the court. At the conclusion of the hearing the plaintiff requested, in writing, that the court "separately state his conclusions of law from his conclusions of fact."

The court filed a "separate finding of law and fact" as follows:

"The court finds as a matter of law that where the fraud claimed relates to the nature or purport of the release the claim-

ant may maintain a subsequent action without tendering back the amount of the settlement covered by the release, and, if proven, the release is void.

"The court finds as a matter of law, where the signer of a release is able to read and is handed the release to sign it and the signer either having read it or having declined to read it, the release is not void but voidable, and that fraud in the inducement must be shown by clear and convincing evidence in order to establish fraud.

"The court finds as a matter of law that where a release has been obtained by fraud in the inducement, the fraud being merely the basis for declaring the release voidable but not void, the release may not be set aside and the claimant permitted to proceed with suit unless the money paid upon the execution of the release is returned to the party who paid it.

"As a matter of fact the court finds no evidence which tends to show the nature and purport of the release to be a fraud.

"As a matter of fact the court finds that the party signing the release does not claim she could not read but offers evidence which only tends to show she did not appreciate the nature of the instrument that she was signing. As a matter of fact the court finds that it had not been shown by the greater weight of the evidence that the signer of the release was induced to sign it by fraud, and that even if the release was signed because of fraudulent misrepresentations, the money paid by way of settlement has not been tendered back and even if the court were to find the release to be voidable because of fraudulent representations, the fact that the money has not been paid back or tendered back precludes the plaintiff from maintaining the within action."

Upon the foregoing "separate finding of law and fact" judgment was entered finding that there was no fraud *in factum* and no fraud in the inducement and ordering plaintiff's action dismissed at plaintiff's costs. Motion for new trial was overruled.

This appeal is on questions of law from the judgment dismissing plaintiff's action.

Allegations as contained in plaintiff's petition are not evidence of the plaintiff's injuries, but the seriousness and extent

of plaintiff's injuries have, in this case, been substantiated by the hospital records brought into evidence.

Louise Carpenter was taken to the hospital on April 30, the day of the accident, and remained until June 6th, when she was discharged as improved. Final diagnosis, as shown on the hospital report, was:

"Multiple skull fractures
"Concussion and Contusions cerebral
"Cerebral edema
"Paralysis 2, 3, 4, 6 & 7th Cranial nerves
"Optic nerve damage."

The injuries are also substantiated by the testimony of the adjuster for defendant's insurer who testified:

"Q. When we took your deposition your answer was that she was a pathetic creature, and that was a true definition. A. That was my feeling.

"Q. What about the child would cause you to say she was pathetic looking? A. The thing that sticks in my mind, she had one eye lid closed and the other eye lid dropped and she held her head up to look."

After the accident Mr. Murphy, the claims adjuster for defendant's insurer, contacted Mrs. Carpenter and told her that the bills would be paid. Later he advised her that he would get a lawyer to take care of the matter and arranged for her to go to the office of the attorney for defendant's insurer. She took her daughter with her. While at the office papers were prepared and signed providing for settlement and payment of $1,500 to her and her daughter, which the court refused requiring that papers be filed for the daughter only, since otherwise the amount would exceed $500 and settlement could not be made without appointment of a guardian.

The application and release were signed on October 24th, witnessed by defendant's counsel, now deceased, and by Mr. Murphy, who testified in the instant proceeding. They were notarized before defendant's counsel on October 24, 1947. All the papers including authorization by the court bear the file stamp of the Probate Court dated October 25, and the testimony was that the authorization is filed on the day it is signed by the court. This discrepancy of dates, which shows the release to have been executed before authorized by the court, is probably

not too important, excepting as it shows the manner in which this entire procedure was handled and controlled by the attorney for defendant's insurer. The testimony is that he had Maude and Louise Carpenter go to Probate Court, that defendant's counsel went in first to talk to the judge while Mrs. Carpenter and Louise waited in the outer office, after which Mrs. Carpenter was called in, but Louise remained in the outer room. Maude Carpenter testified that the settlement was not explained to her, she could not read, only a part of the papers were ever read to her, and, believing the settlement to be for expenses only, she told the judge she was agreeable to it and she was not advised, or did not have knowledge, otherwise.

The monies paid in settlement were not paid directly to Mrs. Carpenter. Defendant's counsel went to the bank and opened the $500 account in the name of Maude I. Carpenter, as mother and natural guardian of Louise, which amount, Mrs. Carpenter testified, was used for medical expenses.

The Probate Court Judge testified that he has no recollection of this particular case. The only records in Probate Court are defendant's exhibits 1, 2, 3, and 4, to wit, the application, journal entry of authorization, report of settlement and journal entry of confirmation. In view of all the unusual circumstances, we feel that had the judge been aware of all the facts he could not help but have recollection of this case, in spite of the lapse of time and number of other cases heard.

Execution and delivery of the papers signed by Maude I. Carpenter, including the release, are admitted, but plaintiff contends they are void because she was fraudulently led to believe, and did believe, that she was entering into settlement for expenses only.

In the case of *Perry v. The M. O'Neil & Co.*, 78 Ohio St., 200, the Supreme Court of Ohio held:

"1. A release of a cause of action for damages for personal injuries, that is void, is not a bar to such an action, and the plaintiff may, if it is set up by answer as a bar to his right of action, by reply aver the facts that make it void; but if it is not void, but only voidable, he cannot maintain his action until the release is set aside."

"3. If the execution and delivery of the release are admitted, the burden of proving it void is upon the releasor."

This action is not one of which the Probate Court has been given exclusive jurisdiction under the provisions of Section 2101.24, Revised Code, and we find that, whether the Probate Court has jurisdiction or not, the Common Pleas Court may determine this issue, as raised by the answer and plaintiff's reply thereto, of whether the release is void.

For the purpose of determining whether a fraudulent transaction is absolutely void or merely voidable, see *Flynn* v. *Sharon Steel Corp.*, 142 Ohio St., 145:

"1. Whether a fraudulent transaction is absolutely void or merely voidable depends upon the nature of the fraud inducing or affecting it.

"2. Where, in the execution of an instrument, fraud as to the nature of the instrument signed is proven, such instrument is wholly void and ineffective."

The Supreme Court of Ohio in *Picklesimer* v. *Baltimore & Ohio Rd. Co.*, 151 Ohio St., 1, held:

"1. In the settlement of a tort claim for damages arising from personal injuries, a release obtained by fraud in the factum is void, and the claimant may maintain a subsequent action without returning or tendering the consideration he received."

Plaintiff's claim in this case is that her mother, Maude I. Carpenter, and the Probate Court were fraudulently misled as to the nature of the release signed; that is into believing that it was for expenses only and not of all claims including the minor's claim for her personal injuries.

We examine the court's separate finding of law and fact and find that the court made no separate finding of fact as to what Maude I. Carpenter did or did not understand, or as to those items upon which the parties had a meeting of the minds, but apparently based its judgment upon the following finding of fact:

"As a matter of fact the court finds that the party signing the release does not claim she could not read but offers evidence only to show that she did not appreciate the nature of the instrument that she was signing."

This finding of fact, "that the party signing the release does not claim she could not read," we find to be against the manifest weight of the evidence.

The finding refers to Maude I. Carpenter, mother of the

plaintiff. Plaintiff's father had died in 1941. Maude I. Carpenter testified that in 1947 she was unemployed and living at home raising plaintiff and three other minor daughters. She had a fourth grade education and testified that she knew how to read, but could not read the papers presented to her because she had no glasses, that she could not read the columns in the funny paper, that she could see a line but as far as reading print, no. She had broken her glasses and was without glasses for about 2 years before the accident and until about 3 years after.

Upon the finding that Maude Carpenter could read, the trial judge applied the holding of the Supreme Court of Ohio in *Dice* v. *Akron, Canton & Youngstown Rd. Co.*, 155 Ohio St., 185, that:

"1. A complete release is not void because of fraud in the factum, where it was executed by a person of ordinary mind who could read and was not prevented from reading the release before signing it, even if, in reliance upon the false representations of the person to whom the release was given, he did not read the release and believed that such release was only a partial one."

Thus the trial judge reached his conclusion of law as follows:

"The court finds as a matter of law, where the signer of a release is able to read and is handed the release to sign it and the signer either having read it or having declined to read it, the release is not void but voidable."

The ability to read, however, requires both mental and physical ability to read. In view of our finding that because of physical disability not corrected by glasses the court's finding that plaintiff could read was against the manifest weight of the evidence, it was prejudicial error for the court to apply its conclusion of law applicable to persons able to read to the facts of this case.

We are mindful of the holding of the Supreme Court of Ohio in *In re Guardianship of Kelley*, 172 Ohio St., 177, that:

"In the absence of a showing of prejudicial error in the proceedings or of fraud or collusion on the part of those involved, a settlement of an injured minor's claim for damages by his guardian in conformity with the provisions of Section

10507-19, General Code (now Section 2111.18, Revised Code), is valid and binding on the minor and may not be set aside.''

Further, we are mindful that because of the manner in which the issue is raised in the instant case, only fraud *in factum* which renders the instrument void is sufficient.

In the opinion in *In re Guardianship of Kelley, supra,* on page 182, a quotation from 27 American Jurisprudence, 852, Section 131, appears as follows:

'' ' '* * * It would seem to be clear that if the court has effective power to authorize a compromise of an infant's rights, it should have power to bind the infant equally with the adult, and to limit his right to object to the same legal causes and to the same time as those to which the adult is limited, bearing in mind, of course, that the infant necessarily has a greater range of attack for fraud or collusion. If an infant is to have an opportunity after he becomes of age, perhaps fifteen or twenty years later, to attack for mere error a decree entered with the sanction of the court upon a compromise, it would seem that it is idle to talk about the power of the court to authorize compromise in such cases.' ''

And in the opinion, on page 183, the court pointed out:

''Moreover, every reasonable presumption favors the validity of a judgment of a court of record, regular on its face and where the court had jurisdiction of the parties and the subject matter, and this is especially true where such judgment is challenged after a considerable lapse of time. It will be presumed that the judgment was properly rendered, and that the court acted rightfully in all respects, and proof to remove the presumption of the validity of such a judgment must be clear and convincing.''

And in *O'Donnel* v. *Langdon*, 170 Ohio St., 528, the Supreme Court of Ohio held:

''In the absence of fraud, misrepresentation, duress or superior knowledge on the part of a releasee, or incapacity of the releasor to read and comprehend the language of a release, such releasor may not be relieved of the effect of a 'full release of all claims, demands and causes of action on account of * * * injuries' resulting from a collision of motor vehicles, such request for relief being predicated on the ground that the release was intended to be limited to property damage alone.''

As we have pointed out, we are mindful of the law, but under the evidence contained in the record in this case it is our finding that the finding of the Common Pleas Court that there was no fraud *in factum* was against the manifest weight of the evidence, as was the finding of the Common Pleas Court that Maude I. Carpenter could read. In our opinion it was against the manifest weight of the evidence for the Common Pleas Court to fail to find fraud in the acts of the agent and attorney for the defendant's insurer, which led Maude I. Carpenter to believe, as she did believe, that the settlement was for expenses only. Such fraud affects the nature of the instrument which, by its terms, released all claims of Louise Carpenter. It is fraud *in factum* which renders a release void.

Assignments of error Nos. 1, 2 and 3 are sustained. Assignment of error No. 4 is overruled.

For the reasons herein set forth and after careful consideration of the entire record, it being our finding that the judgment of the Common Pleas Court is against the manifest weight of the evidence, the judgment will be, and hereby is, reversed with this cause to be remanded for retrial and further proceedings according to law.

Counsel for plaintiff contend that the issue is one which must be presented to a jury. We find, however, that final determination of the issue of fraud is for the court, it being within the discretion of the court as to whether to submit the issue to a jury for a special finding to be considered by the court in making its determination. See *Flynn* v. *Sharon Steel Corp.*, 142 Ohio St., 145:

"3. In an action for personal injury where a release is pleaded in the answer, and the averments of the reply are of facts, which, if proven, would render the release void, such cause may proceed to trial and judgment without first determining the validity of the release.

"4. In such action the court in its discretion may submit an issue of fraud, as to such release, to the jury under proper instructions.

"5. In an action wherein an issue of fraud is submitted to the jury, its finding in respect thereto is not binding upon the court."

Also, see, *Dice* v. *Akron, Canton & Youngstown Rd. Co.*, 155 Ohio St., 185, paragraphs 3 and 4 of the syllabus.

*Judgment reversed and cause remanded.*

VAN NOSTRAN and McLAUGHLIN, JJ., concur.