OPINION
In this action originally instituted by appellee Charles den Heijer for judgment on two cognovit notes, appellants Anthony R. Lux and Springer Lithographic, Inc.[1] appeal from the trial court order adopting the report of the special master appointed by the court to conduct an evidentiary hearing pursuant to Civ.R. 53. The order appealed from essentially granted judgment to appellees den Heijer and the accounting firm of Ivan D'Amico, Inc.[2] on all claims eventually alleged below.
Appellant asserts in his many assignments of error that the trial court's order is based upon improper evidentiary rulings made by the special master, is contrary to the evidence and, further, disregards "bias" shown by the special master. After a thorough review of the record, this court disagrees with appellant's assertions and therefore affirms the trial court's order of judgment.
The record reflects appellant became involved in the printing business in 1982 when he purchased Walker Printing, Inc., a "brokering company."[3] A year later, appellant obtained a partner and began a company he named Great Lakes Graphics, which did "sales and production" of printing work. Appellee, who had been the accountant for Walker Printing prior to appellant's purchase of that company, agreed with appellant to continue his services; later, appellee aided appellant in "setting up the books" for appellant's new business concern.
Appellee's services for Walker and Great Lakes Graphics included the "preparation of annual tax returns, the corporate returns, city, franchise, [and] personal property, [and] the preparation of a financial statement." Appellee's duties included neither performing the day-to-day bookkeeping for appellant's businesses nor completing either sales or payroll tax forms for the businesses.
In 1986, appellant decided to "give up the brokering part" of his business and to "develop a printing facility." Therefore, he purchased some equipment through Walker Printing, hired some new employees and notified Walker Printing's customers of the new company, which he named Springer Lithograph, Inc. Appellant was the sole shareholder for this company. Springer "leased" Walker Printing's equipment and used some of Great Lakes Printing's employees to conduct its operations. Although appellee continued his accounting services for this new venture of appellant's, once again he did not perform either day-to-day bookkeeping or complete sales and payroll tax forms for Springer.
In March, 1987 appellants Great Lakes Graphics partner became dissatisfied with appellant's use of some of Great Lakes Graphic's employees to do work for Springer. As a result, appellant at that time hired a new bookkeeper for Springer.
Appellee continued his accounting services with the understanding that he would "review" the new bookkeeper's work when preparing Springer's financial statements. Appellee was unaware the new bookkeeper neglected to file sales and payroll tax returns for Springer. Eventually, however, appellee began to notice "irregularities or errors" in the documents she provided to him. Whenever appellee became aware of obvious posting or mathematical errors, he made appropriate corrections to Springer's financial statements. Appellant did not request monthly financial statements for Springer in 1987; therefore, appellee prepared only an annual statement for that year.
In 1988, Springer began "receiving numerous letters regarding sales tax assessments." Appellant requested appellee to "[t]ake care of this problem." Appellee began a correspondence with the tax authorities on Springer's behalf.
In late 1988, at appellant's request and based upon the figures provided by the new bookkeeper, appellee began preparing financial statements for Springer on a monthly basis. The record reflects the company's financial statement for September 1988 showed a net income of $65,766.61. In October 1988, the net income figure was $134,555.38. The following month, the net income was $101,507.74; however, in December 1988, the figure had dropped to $30,853.12.
Appellee's concern over this discrepancy in net income led him to suggest to appellant that appellant hire a "third party" to "help straighten out the receivable postings for 1988." Appellant followed this suggestion in January 1989.
Appellant's new employee, Mary Lou Adams, did not try to "correct" the "original work papers" prepared by Springer's bookkeeper; rather, she obtained the actual monthly invoices and cash receipts and began to "repost" them in order to obtain a 1988 accounts receivable balance for the company. By the time Adams completed her work in late April 1989, both appellant and appellee became aware that the company's "receivables were overstated" in the 1988 monthly statements. Appellee subsequently completed the 1988 federal tax return for Springer in the fall of 1989; it displayed a net profit for the company in 1988 of only $33,012.00.
During 1989, Springer experienced a "drop" in sales as the general economy slowed and its customers' orders decreased. Furthermore, Springer made a number of "payments" to either appellant, himself, or the other companies appellant owned; these payments eventually totalled "99.7 percent of the gross profits" of the company for that year.
This combination of events led to both "cash flow" and "tax problems" for Springer. By September 1989, appellant, as Springer's owner and sole shareholder, faced substantial assessments from the Internal Revenue Service and the Ohio Department of Taxation. Appellee proposed three "plans" to appellant that were designed to aid Springer overcome its problems; in all of them, he noted a "total" of over $65,000 was needed to finance Springer.
By this time, appellant and appellee had become "friends." At trial, appellee stated appellant "asked" him for a loan. In the fall of 1989, over the course of several weeks, appellee gave appellant four personal checks in amounts that totalled $65,000.00. The checks were deposited by appellant into Springer's bank account. On October 5, 1989 appellant signed a cognovit note in the amount of $30,000 made payable to appellee. On December 21, 1989 appellant signed another cognovit note in the amount of $30,000 made payable to appellee.
In January 1990, using a Springer check, appellant made a payment to appellee on the "loan." The loan was listed as a liability on Springer's balance sheets; eventually, however, it was indicated simply as part of a debt owed by the company to appellant.
By the end of 1990, the relationship between appellant and appellee was strained. Appellant engaged another accounting firm to help him make business decisions; however, Springer continued to have financial problems. On April 4, 1992 the company filed a bankruptcy petition in the United States Federal Court. Appellee was not listed as a creditor of Springer on the petition.
On April 21, 1993 appellee filed in the trial court a complaint demanding judgment against appellant on the cognovit notes; on it, appellant, by and through counsel, had signed a "confession of judgment."[4] However, on May 19, 1993, after appellee had obtained the judgment, appellant filed a motion to vacate the judgment pursuant to Civ.R. 60(B)(5).
On August 31, 1993, while his motion was pending, appellant filed a separate complaint against appellee, alleging therein claims of accounting malpractice, breach of contract, fraud and intentional infliction of emotional distress.[5] After the trial court granted appellant's motion to consolidate the two cases, appellant filed an answer to appellee's original complaint on the cognovit notes, a counterclaim for the tax penalties incurred by Springer, and a "third party complaint" that contained the same claims as alleged in his separate complaint. Subsequently, appellant added Springer as a "new third party plaintiff" to the action.
Following a lengthy discovery process, the trial court referred the matter for hearing before a special master pursuant to Civ.R. 53. The special master eventually appointed to hear the case was an attorney and certified public accountant ("CPA") whose name had been suggested to the trial court by appellant.
The hearing was conducted over several days. Appellant testified in his own behalf and also presented the testimony of the following witnesses: Ralph Lindeman, a certified management accountant ("CMA"); Molly Wurster, Great Lake Graphic's bookkeeper; and, on cross-examination, appellee. Numerous exhibits were presented by appellant during the testimony of these witnesses.
Appellee then presented his own witnesses and evidence; he testified in his own behalf and also presented the testimony of Mary Lou Adams, Richard Szekely, a CPA, and two accountants appellant had engaged after 1990. The special master also heard additional testimony from both appellant and appellee.
Subsequently, the special master issued his opinion and report. The special master reviewed the testimony and evidence before stating, in essence, the following conclusions: (1) appellant had failed to prove his claims that appellee had a duty to file sales and payroll tax returns; (2) appellant failed to prove appellee's inadequate compliance with certain professional CPA standards was the proximate cause of Springer's bankruptcy; (3) appellant had failed to prove he detrimentally relied upon any of appellee's statements as to Springer's net income in 1988; (4) appellant failed to prove his claim he had suffered emotional distress; and (5) in any event, appellant's claims were time-barred pursuant to R.C. 2305.09(D). As to appellee's claim, the special master also concluded as follows: (1) the parole evidence rule barred any attempt by appellant to introduce "substitute" contractual terms for the ones set forth on the face of the cognovit notes and (2) appellant had signed the notes in his individual capacity and had received consideration for the notes in the form of proceeds that he used to pay a tax burden for which he personally was liable; therefore, (3) appellant was personally liable on the notes. Based upon the foregoing, the special master recommended judgment for appellee on both the cognovit notes and on appellant's claims.
Appellant tiled objections to the special master's opinion and report. The trial court made its own independent review of the testimony and evidence adduced at the hearing before overruling appellant's objections. Eventually, the trial court's final order adopted the report and opinion of the special master, thus finding in favor of appellee on all of the claims asserted below.
Appellant has filed a timely appeal of the trial court's order; he presents ten assignments of error for this court's review.[6] Appellants assignments of error will be combined when appropriate for purposes of both logic and clarity.
Appellants first, fourth and fifth assignments of error state:
 I. THE TRIAL COURT ERRED BY PROHIBITING PROFESSOR RALPH W. LINDEMAN FROM TESTIFYING ON STANDARDS OF CONDUCT OF CERTIFIED PUBLIC ACCOUNTANTS.
 IV. THE TRIAL COURT ERRED BY ADOPTING THE SPECIAL MASTERS REFUSAL TO PERMIT TO (SIC) APPELLANTS TO INTRODUCE CRITICAL REBUTTAL EVIDENCE BECAUSE "IT WAS NOT INTRODUCED IN THE CASE-IN-CHIEF."
 V. THE TRIAL COURT ERRED BY SUSTAINING THE SPECIAL MASTERS RULING AGAINST APPELLANTS ON THE ISSUE ISSUE (SIC) OF COMPARING THE ACCOUNTING SERVICES PROVIDED BY APPELLEES TO APPELLANT ANTHONY R. LUX'S
 COMPANIES, NAMELY, APPELLANT SPRINGER LITHOGRAPH, INC. AND GREAT LAKES GRAPHIC, INC.
In these assignments of error, appellant challenges certain evidentiary rulings made by the special master during the hearing. See Civ.R. 53(C)(2).
The decision to admit or to exclude evidence is a matter left within the trial court's sound discretion. Urbana ex rel. NewlinV. Downing (1989), 43 Ohio St.3d 109. This includes determinations both as to an expert's qualifications to testify and as to whether rebuttal testimony is proper. State v. Awkal
(1996), 76 Ohio St.3d 324 at 331; Phung V. Waste Management, Inc.
(1994), 71 Ohio St.3d 408 at 411.
Appellant first argues his expert witness Ralph Lindeman was improperly prohibited from answering questions as to whether appellee's acts with regard to Springer complied with ethical standards promulgated by the American Institute of Certified Public Accountants ("AICPA").
At the outset, appellant's initial argument faces two problems: (1) appellant not only failed to object to the special master's ruling, indeed he acquiesced, stating that appellee's objections to Lindeman's testimony on this subject were "meritorious"; and (2) appellant's agreement with the special master's ruling caused him to fail to proffer what the substance of Lindeman's testimony on the subject would have been. Under these circumstances, appellant's first argument has been waived. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41 at 43; State v. White (1982),6 Ohio App.3d 1 at 4; Evid.R. 103(A)(2).
At any event, a review of the record fails to demonstrate the special master abused his discretion in this matter. Lindeman testified that he was not a CPA, that he had never been employed by an accounting firm, that he had never testified as an expert in cases involving either accounting negligence or accounting malpractice, and that in his expert report, he had not listed the AICPA Code of Professional Conduct as a document upon which he had relied on forming his opinions. After carefully considering Lindeman's statements and qualifications, however, the special master permitted Lindeman to testify at length concerning matters of which he had "experience," such as "methodologies * * * and the way business decisions were made." Based upon the record, therefore, the special master's decision to limit Lindeman's testimony was not an abuse of discretion. Campbell v. The DiamlerGroup, Inc. (1996), 115 Ohio App.3d 783.
Appellant next argues the special master improperly limited his "rebuttal" evidence on the issue of whether Springer's failure as a business was caused by the loss of some major customer accounts; however, a review of that portion of the record to which appellant refers in his appellate brief reveals appellant actually takes issue with the special master's limiting of appellant's cross-examination of appellee's expert witness. The special master refused to permit appellant to question the witness with respect to documents that had not been introduced into evidence. Since this was proper, appellant's argument is rejected. Evid.R. 703; see, e.g., Mahan v. Bethesda Hosp., Inc.
(1992), 84 Ohio App.3d 520; cf., Phung v. Waste Management, Inc.,supra, at 410-411.
Finally, appellant argues the special master improperly excluded certain documentary evidence designed to demonstrate the more thorough level of accounting services performed by appellee for Great Lakes Graphics compared to Springer. In view of the testimony of both Molly Wurster and appellant in this regard, however, the evidence merely would have been cumulative. Evid.R. 403(B). Therefore, there was an abuse of neither discretion nor prejudice to appellant.
Based upon the foregoing, appellant's first, fourth and fifth assignments of error are overruled.
Appellant's second, sixth, seventh and ninth assignments of error state:
 II. THE TRIAL COURT ERRED BY ADOPTING THE SPECIAL MASTER'S OPINION THAT APPELLANT ANTHONY R. LUX WAS LIABLE ON THE PROMISSORY NOTES IRRESPECTIVE OF UNEQUIVOCAL WRITTEN ADMISSION AND ACTIONS BY APPELLEE CHARLES DEN HEIJER THAT THE LOAN WAS TO APPELLANT SPRINGER LITHOGRAPH, INC.
 VI. THE TRIAL COURT ERRED IN ADOPTING THE SPECIAL MASTERS OPINION AND REPORT WHICH FOUND THAT THE STATUTE OF LIMITATIONS HAD RUN ON THE ACCOUNTING MALPRACTICE CASE ON THE PREMISE THAT APPELLANT ANTHONY R. LUX KNEW MORE ABOUT ACCOUNTING THAN APPELLEE CHARLES DEN HEIJER.
 VII. THE TRIAL COURT ERRED BY ADOPTING THE SPECIAL MASTERS REPORT WHICH FOUND THAT APPELLANT ANTHONY R. LUX HAD PERSONALLY BENEFITED FROM APPELLEE CHARLES DEN HEIJER'S CHECKS BEING DEPOSITED INTO APPELLANT SPRINGER LITHOGRAPH, INC.'S CHECKING ACCOUNT.
 IX. THE TRIAL COURT ERRED BY IGNORING APPELLEE'S VIOLATION OF AICPA RULE 101 REQUIRING INDEPENDENCE, RULE 102 CONFLICT OF INTEREST AND RULE 201 GENERAL STANDARDS REGARDING COMPETENCE, DUE CARE, PLANNING AND SUPERVISION AND SUFFICIENT RELEVANT DATA.
In these assignments of error, appellant essentially argues the judgment in favor of appellee is against the manifest weight of the evidence. This court disagrees.
A judgment that is supported by competent, credible evidence going to all essential elements of the case will not be reversed on appeal. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77;C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279;Holm v. Smilowitz (1992), 83 Ohio App.3d 757 at 772.
In his second and seventh assignments of error, appellant argues the evidence demonstrated appellee's $65,000 loan was both intended and treated as a loan only to Springer; therefore, he, personally, was not liable on the cognovit notes;
A review of the evidence, however, reveals appellee testified he loaned the money to appellant because appellant was a "friend," simply because he was aware of appellant's financial difficulties and because appellant "asked" him. Subsequent to the time appellant deposited the money into Springer's account, appellant treated the money as a debt owed by Springer to him personally. Moreover, appellant, himself, did not have to invest $65,000 more of his own personal income to save a company that was owned only by him. Finally, appellee was not listed as a debtor of Springer when appellant filed the petition for bankruptcy. Southern Florida Banc Savings Assoc. V. ProfessionalInvestments of America (Nov. 17, 1988), Cuyahoga App. No. 54683, unreported. Although appellant intimated in his testimony that appellee's reason for the loan was actually motivated by a feeling of responsibility for Springer's condition, the credibility of these opposing witnesses was for the special master to resolve.
The cognovit notes are included in the record. By their terms, they constitute an unambiguous agreement by appellant to personally repay the loan made by appellee. Appellant testified he had been involved in several businesses over the course of many years and that he had taken accounting courses and had taught "[business management [and] bookkeeping." Moreover, the cognovit notes show only appellant's signature; there is no indication appellant signed them in his capacity as president or agent of Springer. R.C. 1303.42(A); R.C. 1303.39(B)(1). Under these circumstances, it is appropriate to paraphrase a quote fromDice v. Akron, Canton Youngstown R.R. Co. (1951). 155 Ohio St. 185, which recently was cited in Ed Schory Sons, Inc. v. Soc.Natl. Bank (1996), 75 Ohio St.3d 433 at 441: If a businessman can read, and is not prevented from adding to what he signs, he alone is responsible for his omission to add to what he signs. The evidence supported the special master's conclusion that appellant benefitted personally and was personally liable on the note; therefore, the trial court did not err in adopting his opinion in these matters.
The special master's conclusion that appellant's claim of accounting malpractice was time-barred also was supported by the evidence. The evidence demonstrated both that appellant is a person with significant business acumen and that the November 1988 leap in net income was a figure of such a questionable nature that in December 1988, appellant agreed with appellee an outside bookkeeper would be hired. Thus, in January 1989, almost immediately after the figure was generated, appellant hired Adams. The result of Adams' work was available to appellant by April 1989. Under any view of the evidence, appellant thus was required to present his claim for accounting malpractice well before it finally was instituted in August 1993. R.C. 2305.09(D);Investors REIT One v. Jacobs (1989), 46 Ohio St.3d 176.
Finally, although appellant argues in his ninth assignment of error the trial court "ignored" evidence appellee. had violated AICPA ethical standards in his dealings with Springer, a review of the record fails to substantiate appellants argument. Rather, the special master's opinion and report demonstrates appellee's specific violations of certain ethical standards carefully were considered but were deemed of insufficient materiality to support any of appellant's claims.
After appellant filed his objections to the special master's report, the trial court independently reviewed both the evidence and the special master's conclusions. DeSantis v. Soller (1990),70 Ohio App.3d 226. As permitted by Civ.R. 54(E)(4)(b), the trial court subsequently adopted them.
Since the special master's conclusions and the trial court's order adopting those conclusions were supported by competent, credible evidence in the record, appellants second, sixth, seventh and ninth assignments of error are overruled.
Appellants eighth assignment of error states:
 THE TRIAL COURT ERRED IN "FINDING FACTS" NEITHER IN THE OPINION AND REPORT OF THE SPECIAL MASTER, NOR IN THE HEARING TRANSCRIPT BUT SUBSEQUENTLY PROVIDED BY APPELLEES.
In this assignment of error, appellant does not "take issue with the amount"; however, he challenges the trial court's judgment entry because it reduced his liability on the notes, rendering judgment for appellee in the amount of $65,000 plus interest but "less $5,000.00 of interest paid." Appellant contends the trial court must have obtained this figure from materials supplied subsequent to the hearing.
Initially, this court is disinclined to sustain an assignment of error in which the appellant is essentially arguing the judgment for the opposing party should have been in a higher amount since it does not appear appellant sustains harm by permitting this portion of the judgment to stand. Secondly, nothing in the record of the proceedings below supports appellant's assertion that the trial court obtained the $5,000 figure from appellee after the conclusion of the hearing. Cf.,DeSantis v. Soller, supra.
For these reasons, appellant's eighth assignment of error is overruled.
Appellants third and tenth assignments of error state:
 III. THE TRIAL COURT ERRED BY ADOPTING THE SPECIAL MASTERS ABUSE OF DISCRETION AND BIAS IN HIS LEADING QUESTIONING OF APPELLEE CHARLES DEN HEIJER.
 X. THE TRIAL COURT WAS BIASED AGAINST THE APPELLANTS.
Appellant argues in these assignments of error that because the special master made some evidentiary rulings in appellee's favor and occasionally questioned the witnesses directly, he demonstrated "bias" against appellant. The record, however, belies appellant s argument.
This court notes that appellant proposed the name of the special master eventually chosen by the trial court to hear the evidence. Moreover, appellant failed to object to the manner in which the special master conducted the proceedings.
Finally, a review of the transcript of the hearing, which took place over a number of days, reveals the special master expended a great deal of effort in maintaining an impartial presence. The special master often permitted appellant and his counsel much latitude; thus, answers to questions regarding tangential matters were allowed, as were documents of questionable relevance to the issues in the case. Furthermore, the special master's questions of the witnesses were designed merely to clarify their testimony; a magistrate does not become an advocate merely by examining a witness to elicit information. Civ.R. 53(C)(2)(c); In reMiller (1996). 109 Ohio App.3d 455.
In short, since there is nothing in the record to substantiate appellant's third and tenth assignments of error, they are overruled.
The order and judgment of the trial court are affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE. P.J. and PATRICTA A. BLACKMON, J. CONCUR
 JUDGE KENNETH A. ROCCO
[1] Herein after referred to in the singular as "appellee."
[2] Herein after referred to in the singular as "appellant."
[3] Quotes indicate either testimony of a witness or statements contained in the materials introduced into evidence at the hearing held before the special master.
[4] This case has been designated App. No. 73886.
[5] This case has been designated App. No. 73887.
[6] Appellants assignments of error as stated in his "Table of Contents" to his appellate brief are set forth in this opinion; the assignments are occasionally stated differently immediately preceding the argument portion of the brief.