In re GUARDIANSHIP OF MATYASZEK.

[Cite as *In re Guardianship of Matyaszek,* 159 Ohio App.3d 424, 2004-Ohio-7167.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 21897.

Decided Dec. 29, 2004.

426

Paul W. Flowers, Joseph A. Delguyd, and Edgar F. Heiskell III, for appellant, Adam Matyaszek.

Elizabeth B. Wright, Jennifer A. Lesny Fleming, and Jennifer Mingus Mountcastle, for appellee, Ford Motor Company.

CARR, Presiding Judge.

{¶ 1} This matter is before this court on appellant Adam Matyaszek's appeal from a judgment of the Summit County Probate Court that held that the magistrate had abused his discretion in granting appellant's motion to vacate judgment and denied the motion. For the following reasons, this court finds that the probate court abused its discretion in denying the motion to vacate, and we reverse.

I

{¶ 2} The facts in this case have been well fleshed out by both the magistrate and the probate court.

## A. Background

### 1. The accident

{¶ 3} On April 26, 1987, when he was two years and ten months old, appellant was a passenger in a Bronco, which was involved in an automobile accident. At the time of the accident, appellant's father was driving the Bronco and attempted to avoid two vehicles allegedly rapidly approaching from the rear. Appellant was taken to an emergency room at MetroHealth Center, where he remained in intensive care for three days. He suffered from a closed-head injury. He remained in the hospital in the critical-care unit until May 5, 1987, at which time he was released in stable condition.

{¶ 4} Appellant's attending physician, Dr. Mary Hlavin, recommended that appellant return to the Neurosurgery Clinic in two weeks for a follow-up visit. Her prognosis for appellant's recovery was "excellent."

### 2. Appellee's Investigation

{¶ 5} Appellee Ford Motor Company began an investigation into the accident. Appellee hired Shepard's Claims Service to investigate the accident. Shepard Claims Service's agent was Thomas E. Schacher. Schacher obtained a copy of the police report and appellant's medical records pursuant to medical releases obtained from his parents. Schacher requested medical records from Metro-Health, A. Hugh McLaughlin, D.O., who was the family's physician, and E. Grisoni, M.D.

{¶ 6} On December 23, 1987, appellant's father signed a statement to Schacher claiming that his son's injury was "a concussion, fractured skull and the entire back of his brain was swollen * * * but he seems to be O.K. now."

{¶ 7} On February 1, 1988, approximately ten months after the accident, Dr. McLaughlin, appellant's family physician, responded to Schacher's request for medical information about appellant's condition. Appellant's mother had requested that Dr. McLaughlin come to the hospital immediately after appellant's accident, and he did. Dr. McLaughlin's letter stated:[1]

> I am in receipt of your request for information in regard to injuries received by the above named individuals in a vehicular accident of April 26, 1987. As

---

1. Dr. McLaughlin's letter is set out in detail because it provides one of the primary grounds for appellant's motion to vacate.

you undoubtedly know, I am the family physician for the Matyaszek family and as such can comment on the residual noted effects of the accident. However, since the accident took place around the Cleveland area, the emergency treatment was provided by Metro General Hospital. I have yet to receive copies of the medical records but was in contact with the treating physician while they were hospitalized. I was also able to see them immediately following the accident while they were receiving emergency care.

\* \* \*

Following the accident, Adam was brought to the emergency room with his pupils fixed and seizure activity ongoing. He had required intubation at the scene and continued to require respirator assisted respirations while in the intensive care unit. He, too, suffered a skull fracture with posterior subdural hematoma. His stay consisted of 8 days in the critical care unit with 3 days post ICU. Dilantin is also required to prevent any further seizure activity. Following the accident, Adam experienced a loss of speech and memory. He was uncoordinated and was forbidden to engage in any strenuous activity for five months. A bicycle helmet was worn for further protection post discharge from the hospital at the insistence of the neurologist at Metro General. Although he had been completely toilet trained prior to this incident, he reverted to his infantile behavior and is just now beginning to control his bowel and bladder habits. His speech is progressing well but was quite slow in returning.

One of the more lingering problems with Adam had been his fear of separation. He refuses to leave his father's side and actually accompanies him to his employment. He continues to wake three to four times per night and can only be comforted by sleeping with his father. Although separation anxiety is common for preschool children, it is quite pronounced in this child.

{¶ 8} Dr. McLaughlin was not appellant's treating physician and did not review any of the medical records regarding appellant's injuries and treatment after the accident. There is no evidence in the record that Dr. McLaughlin ever actually examined appellant. Further, his letter makes no mention of any continuing seizures and relates that appellant's only treatment is the monitoring of the Dilantin levels along with routine neurological evaluations. Dr. McLaughlin did state that he was in contact with the attending physician, and his letter does address the residual effects of appellant's injuries, which Dr. Hlavin, his treating physician, could not.

{¶ 9} In response to Schacher's inquiries, Dr. Grisoni replied in a February 16, 1988 letter that appellant was being treated by Dr. Matt Likavec at Neurosurgery Clinic and that details on his present condition should be obtained from him.

{¶ 10} On March 4, 1988, as the result of his investigation, Schacher issued a status report to appellee together with the medical records and bills.[2] Appellant's medical bills totaled $12,327.66. Schacher also opined that the value of the Bronco was approximately $9,000.

{¶ 11} On March 7, 1988, three days after Schacher issued the report, appellee negotiated a settlement with appellant's parents. The settlement provided that appellant's father would be paid $12,327.66 for appellant's medical bills and would also receive $12,143.25 for the Bronco, which was greater than the $9,000 that Schacher claimed the vehicle was worth. Appellant would be paid $10,000.

3. Preparation of the Settlement Papers

{¶ 12} Appellee hired Squires, Sanders & Dempsey ("SS&D"), a Cleveland law firm, to obtain approval of the settlement. Appellee provided attorney Weaver of SS&D with the terms of the settlement, appellant's MetroHealth discharge summary, and probably Schacher's status report. It is unclear whether appellee provided Weaver with Dr. McLaughlin's letter. Weaver drove to appellant's home and obtained his parents' signatures on the settlement papers. SS&D then prepared and filed the application for settlement with the probate court. The application contained the statement that "said minor has recovered from his injuries."

{¶ 13} On April 18, 1988, the clerk of the Summit County Probate Court issued a notice that a settlement hearing had been scheduled for April 22, 1988. There is no evidence that the probate court sent notice to appellant's father regarding the hearing. Further, there is no evidence in the probate court's records that appellant or his father attended the hearing, and appellant's father denies ever attending any hearing on his son's behalf.

{¶ 14} Appellee's counsel at the hearing, SS&D attorney O'Malley, claims that both appellant and his father attended the hearing. Both courts reviewing appellant's motion to vacate found that appellant and his father likely attended the hearing. Because of the deference this court must give to the fact-finder, we will likewise assume that appellant and his father were present.[3] Also at the hearing was appellee's attorney, O'Malley.

---

2.  Appellant notes that a large portion of the status report was redacted.

3.  We make this presumption to give all benefit of the doubt to appellee. If appellant's father had not been present, appellant's argument that the probate court erred in overturning the magistrate's ruling that the judgment should be vacated would be even stronger.

B. The Settlement Hearing Before Magistrate Wertz

{¶ 15} At the settlement hearing, which was not recorded, Magistrate Wertz approved appellant's settlement for $10,000.[4] He stated that he approved it because of the documents provided to him by appellee's counsel and counsel's representations of appellant's current health. There is also some evidence that Magistrate Wertz questioned appellant's father about his son's medical condition and prognosis and attempted to engage appellant himself at the hearing, although the magistrate does not recollect appellant or his father.

{¶ 16} Magistrate Wertz claimed that it would have been contrary to his usual procedure to approve a $10,000 settlement on behalf of a minor when the minor was unrepresented. He claimed that he approved settlements without representation of the minor only if the injury was worth between $1,500 and $3,000 and there was not even a soft-tissue injury. He claimed, too, that it was his practice to satisfy himself that the infant had, in fact, recovered from his injuries. Further, he claimed that he would have approved a settlement on behalf of a minor without representation only if he knew the attorney from long-standing practice before the court.

{¶ 17} The documents contained in the file and available to Magistrate Wertz include the MetroHealth discharge summary of May 1987 and Dr. Grisoni's letter to Schacher which advised Schacher to obtain all medical information about appellant's current condition from Dr. Likavec at the Neurology Clinic. Magistrate Wertz testified that it was his practice to ask only for the discharge summary when confronted with the medical situation of an infant.

{¶ 18} Absent from the documentation relating to appellant's condition was Dr. McLaughlin's letter of February 1, 1988, and other MetroHealth medical charts and Drs. McLaughlin's and Grisoni's treatment records that appellee's agent Schacher had requested.

{¶ 19} Also, the report of settlement was presented to the magistrate. It was signed by appellant's father and represented that appellee had made no "reimbursement to parents." In fact, appellee had paid appellant's parents $12,327.66 to cover his medical expenses. These bills were contained in the file presented to Magistrate Wertz and were allegedly discussed at the hearing. Appellee's attorney represented to Magistrate Wertz that these matters were to be "handled separately and paid for." Additionally, appellant's parents received $12,143.25 in payment for the Bronco, but this was not disclosed in the report of settlement.

---

4. Magistrate Wertz provided testimony through an affidavit at the hearing to reopen the judgment.

{¶ 20} Magistrate Wertz claimed that the fact that appellant's father was receiving other money in the settlement would have been important to him because parents often "lose sight of whose claim is being settled."

{¶ 21} Immediately after the magistrate approved the settlement, appellee paid appellant's father the settlement amount. The magistrate ordered that the money be placed in Bank One in a restricted account in appellant's name, from which it could not be withdrawn until appellant reached the age of majority. However, appellee made out the $10,000 settlement to "Walter Matyaszek, as parent & natural guardian of Adam Matyaszek." By January 12, 1989, appellant's father was unable to verify to the probate court that the funds had been deposited in the restricted bank account as the magistrate had directed. Appellant's father claimed that he spent the money on appellant's "astronomical" medical bills, but appellant received none of the money, and it is gone.

{¶ 22} After the settlement, appellant claims, his medical condition deteriorated drastically and remains poor. He claims that his future medical care and lost earning capacity will total millions of dollars.

## C. Subsequent Proceedings

{¶ 23} In 1995, appellant's father, allegedly acting on both his own behalf and appellant's, contacted CT Corporation System inquiring whether any settlement documents had been signed that would preclude a lawsuit.[5] The letter notified appellee that appellant's father was investigating the "extent of communications that occurred between Ford Motor Company and Mr. Matyaszek [appellant's father] at or near the time of the accident" in order to "consider initiating formal proceedings." Appellee did not respond to the letter, and no proceedings were initiated as a result of that contact. It appears that these attorneys are connected with appellant's current counsel.

{¶ 24} On October 2, 1999, a year before filing the motion to vacate at issue here, appellant's attorneys again contacted appellee with regard to the settlement. Appellant's attorneys were involved in a lawsuit against appellee brought by appellant's brother. Appellant claims that discovery obtained through that proceeding permitted him to pursue the instant proceeding.

{¶ 25} On April 19, 2000, appellant's current counsel was appointed as his guardian.

---

5. Why the letter was addressed to CT Corporation System and not appellee is not explained in the motions.

D. Motion to Vacate

{¶ 26} On October 4, 2000, appellant, through his guardian, moved to vacate judgment under Civ.R. 60(B)(5) on the grounds that the judgment was procured against his interests as a result of fraud upon the court and that his due process rights were violated because the judgment was taken against his interests and without representation.

E. Magistrate Poulos Grants Motion to Vacate

{¶ 27} On January 23, 2001, probate court Magistrate Poulos granted appellant's motion to vacate. The magistrate found that R.C. 2111.18, which governs the resolution of a minor's claim for injury with "advice, approval, and consent of the probate court," expresses a policy to protect minors. The magistrate found that appellant's parents and appellee's attorneys had an obligation to present accurate and complete information to the court. These duties to provide information to the court were especially compelling because no guardian ad litem had been appointed to protect appellant's interests.

{¶ 28} The magistrate found that Dr. McLaughlin's letter should have been provided to Magistrate Wertz in order to ensure that appellant's interests were protected. Magistrate Poulos noted that Magistrate Wertz himself testified that if he had had the letter he would not have approved the settlement because appellant's injuries were far more serious than what had been represented to him. Magistrate Poulos found that both appellant's parents, by failing to disclose his true condition, and appellee's attorneys, by failing to provide Dr. McLaughlin's letter, perpetrated a fraud on the court.[6]

{¶ 29} The magistrate further found that the failure to disclose the $12,327.61 and $12,143.25 paid to appellant's parents for his medical bills and the cost of the Bronco was also a failure to provide proper information to the court. The magistrate held that Sup.R. 68(B), as in existence at the time of appellant's settlement, required disclosure of additional consideration paid to the parents as the result of the incident causing the injury to the minor. He stated that the purpose of the rule was to prevent parties from paying money to persons other than the minor in order to avoid the scrutiny of the probate court.

{¶ 30} As a result of the foregoing failures to disclose, the magistrate found by clear and convincing evidence that appellee's attorneys had committed a fraud on the court to the detriment and prejudice of appellant.

---

6. Appellant's father did not know of Dr. McLaughlin's letter at the settlement hearing. He was not the party who requested Dr. McLaughlin to provide a letter regarding appellant's condition; appellee's investigator requested it. Appellant did not know of the letter's existence until 1999, when appellee first produced documents.

{¶ 31} Also, as a matter of law and equity, the magistrate found that once appellant's attorneys began representing his interests in 1999, they proceeded with due diligence and that relief from judgment under Civ.R. 60(B)(5) was proper. He ruled that the judgment should be reopened.

F. Probate Court's Review

{¶ 32} Appellee objected to the magistrate's decision, and the probate court rejected the decision. The probate court found that appellant was not entitled to relief under Civ.R. 60(B)(5) because a 12½-year delay between the settlement and the motion to vacate was not reasonable as a matter of law. The court found that appellant's father was fully aware of all the proceedings involving his son and that he was responsible, as a representative of his son, to set aside the judgment within a reasonable time.

{¶ 33} Further, in 1995, attorneys who were allegedly acting on behalf of both appellant and his father contacted appellee with respect to the judgment. The probate court concluded that the motion to vacate was not filed within a reasonable time even using this later date.

{¶ 34} The probate court also found that appellant's father had been present at the hearing and was the only party who may have perpetrated a fraud on the court. The court found that appellant was bound by the representations his father made to the court that he had fully recovered from his injuries. The probate court also found that Magistrate Wertz had had before him all the information necessary to approve the settlement.

{¶ 35} The court also found that appellee's attorneys had not perpetrated a fraud on the court because appellant did not prove that appellee's attorneys made any representations to the magistrate about appellant's condition, that its attorneys had any knowledge of the falsity of statements made by appellant's father regarding his condition, or that they had any intent to defraud the court.

{¶ 36} The court found that appellee's attorneys had had no obligation under the Superintendence Rules to disclose medical payments or property damage received by appellant's father from appellee.

{¶ 37} Last, the court found that Dr. McLaughlin's letter was of virtually no value because it was predicated on hearsay and did not change the diagnosis, treatment, or prognosis given by the treating physician.

{¶ 38} For these reasons, the probate court rejected the magistrate's decision and denied appellant's motion to vacate the judgment.

{¶ 39} Appellant has appealed from the probate court's finding that he was not entitled to relief from judgment under Civ.R. 60(B)(5). First, appellant argues that he has timely sought relief. He further argues that relief was warranted

because fraud is not the only basis upon which to vacate a judgment. He argues that the procedural irregularities that occurred here also provide grounds to vacate, which the probate court improperly failed to consider.

{¶ 40} Appellee disputes that appellant is entitled to relief from judgment on several grounds. First, appellee argues that appellant has raised new issues, which may not be considered on appeal. Appellee also claims that one of the new issues is time-barred under Civ.R. 60(B)(3). Appellee further argues that appellant's motion is not timely under Civ.R. 60(B)(5). Last, appellee argues that appellant's Civ.R. 60(B)(5) motion is meritless.

{¶ 41} This court will first consider whether appellant has raised new issues, which we are precluded from hearing. We will then consider whether appellant has timely moved to vacate the judgment. Last, we will consider whether the probate court abused its discretion in denying appellant's Civ.R. 60(B)(5) motion.

II

New Issues Raised on Appeal

{¶ 42} Appellee argues that appellant has improperly raised two new issues on appeal that we are precluded from considering. The first issue is the identity of the party who allegedly failed to produce Dr. McLaughlin's letter to the magistrate. In the motion to vacate, appellant pursued relief under Civ.R. 60(B)(5) on the grounds that appellee's attorneys perpetrated a fraud on the court by withholding Dr. McLaughlin's letter. Now before this court, appellant is arguing that appellee, not its attorneys, withheld the letter. Appellee claims that these new allegations change the analysis from Civ.R. 60(B)(5) to Civ.R. 60(B)(3) and therefore are time-barred.

{¶ 43} The second alleged new issue is whether appellant's father attended the settlement hearing. In the proceedings below, appellant claimed that his father did not attend the hearing, thereby prejudicing his rights because no one represented his interests. Now appellant is arguing that his father was present but engaged in wrongdoing. Appellee claims that appellant cannot "change horses in midstream" during his appeal on these issues.

{¶ 44} We will consider each issue in turn.

A. Who Failed to Disclose Dr. McLaughlin's Letter to Magistrate Wertz?

{¶ 45} It is true that "[i]ssues not raised and tried in the trial court cannot be raised for the first time on appeal." *Holman v. Grandview Hosp. & Med. Ctr.* (1987), 37 Ohio App.3d 151, 157, 524 N.E.2d 903. Furthermore, a new theory may not be presented for the first time on appeal. As the Ohio Supreme Court has stated:

Issues not raised in the lower court and not there tried and which are completely inconsistent with and contrary to the theory upon which appellant proceeded below cannot be raised for the first time on review.

*Republic Steel Corp. v. Cuyahoga Cty. Bd. of Revision* (1963), 175 Ohio St. 179, 23 O.O.2d 462, 192 N.E.2d 47, at syllabus.

{¶ 46} In this case, this court finds that appellant has not improperly raised new issues or presented a new theory regarding who failed to provide the magistrate with Dr. McLaughlin's letter. Appellant has consistently alleged that failure to present the magistrate with the letter prejudiced the proceedings against him, regardless of whether the attorneys or appellee failed to produce it. The result is the same—the magistrate was not provided with the medical evidence he needed to protect appellant's interests.

{¶ 47} Furthermore, appellant's motion to vacate alleges that either appellee or its attorneys had Dr. McLaughlin's letter. A review of the transcript of proceedings before Magistrate Poulos on the motion to vacate also reveals that the parties argued these allegedly new issues below.

{¶ 48} All the cases appellee cites in support of its argument raise entirely new causes of action or theories. *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections* (1992), 65 Ohio St.3d 175, 602 N.E.2d 622 (constitutional issues first raised in appeal); *BancOhio Natl. Bank v. Abbey Lane Ltd.* (1984), 13 Ohio App.3d 446, 13 OBR 536, 469 N.E.2d 958 (waiver first raised on appeal); *Fusselman v. Westfield Ins. Co.*, 9th Dist. No. 21432, 2003-Ohio-5467, 2003 WL 22339289 (prejudice issue in insurance case first raised on appeal); *Bobinsky v. Tippett*, 9th Dist. No. 21444, 2003-Ohio-3787, 2003 WL 21658356 (promissory estoppel raised for first time on appeal); *McBroom v. McBroom*, 6th Dist. No L–03–1027, 2003-Ohio-5198, 2003 WL 22233909 (mutual mistake first raised on appeal); *May v. Westfield Village, L.P.*, 5th Dist. No. 02–COA–051, 2003-Ohio-5023, 2003 WL 22176727 (estoppel raised for first time as defense); *Stables v. Bland*, 11th Dist. No. 2002–T–0075, 2003-Ohio-1751, 2003 WL 1793071 (grounds to vacate under Civ.R. 60(B)(5) raised for first time on appeal); *St. Clair v. St. Clair* (Oct. 9, 1985), 9th Dist. No. 3835, 1985 WL 10840 (grounds to vacate under Civ.R. 60(B)(5) brought for first time on appeal); *Atlantic Richfield Co. v. McClellan* (Dec. 7, 1984), 11th Dist. No. 3395, 1984 WL 6438 (dower interest as grounds for seeking to vacate judgment under Civ.R. 60(B)(5) first raised on appeal). Appellant's argument in no way presents a new issue.

{¶ 49} Appellee next asserts that if appellant is permitted now to argue that appellee, and not its attorneys, perpetrated a fraud upon the court, then those allegations are time-barred under Civ.R. 60(B)(3). Appellee alleges that any claim of fraud it allegedly perpetrated upon the magistrate is governed by Civ.R. 60(B)(3) and consequently has a one-year time limit. Appellee relies on the case

of *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 5 OBR 120, 448 N.E.2d 1365.

{¶ 50} In *Caruso–Ciresi,* the appellee corporation filed suit against the appellant corporation and others, alleging that appellant illegally received assets from a debtor of appellee in violation of the Ohio Bulk Sales Act. Appellant failed to respond to the complaint, and the trial court entered a default judgment against it. Appellant moved to vacate the judgment under Civ.R. 60(B)(1) on the grounds of excusable neglect on the part of its attorneys. The court denied the motion. Appellant then moved the court to reconsider the motion under Civ.R. 60(B)(5). The court granted the new motion under Civ.R. 60(B)(5) on the grounds that appellant had a meritorious defense. The trial court had the same evidence before it that was presented in appellant's motion to vacate on the grounds of excusable neglect.

{¶ 51} On appeal after trial, the appellate court reinstated the default judgment against appellant. The Ohio Supreme Court affirmed the appellate court, which had held that the trial court abused its discretion when it properly overruled a motion for relief from judgment based on Civ.R. 60(B)(1) and then reconsidered its ruling and, without additional facts before it, vacated its earlier ruling and granted the motion to vacate based on Civ.R. 60(B)(5) simply because the movant had a meritorious defense.

{¶ 52} In this case, however, appellant has not changed grounds under Civ.R. 60. Appellant has always argued that Civ.R. 60(B)(5) applies. This court has found that fraud upon the court constitutes grounds to vacate under Civ.R. 60(B)(5) whether perpetrated by a party or its attorneys. In *Hoyt v. Hoyt* (Aug. 15, 2001), 9th Dist. No 20411, 2001 WL 929380, we defined fraud upon the court as that " 'species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases,' " quoting 7 Moore's Federal Practice (2d Ed.1971) 515, Paragraph 60.33.

{¶ 53} Our finding in *Hoyt* states that either a party or its attorneys may be the entity to perpetrate a fraud upon the court and have the matter considered under Civ.R. 60(B)(5). Clearly, this is what appellant has always alleged. Appellee's argument that appellant is precluded from raising this issue on appeal is meritless.

B. Whether Appellant's Father Attended the Settlement Hearing

{¶ 54} Appellee's argument that appellant has raised a new issue about whether his father attended the hearing is also misplaced. It is true that appellant first argued that his father was not present at the hearing to protect his interests and now raises the specter that his father might attended but failed to

protect his interests. In either scenario, appellant is arguing that he lacked representation at the hearing, regardless of whether his father was present. This contention is consistent with his argument throughout these proceedings that he lacked meaningful representation at the hearing. Furthermore, at the hearing on the motion to vacate, the parties argued about whether appellant's father was present at the settlement hearing.

{¶ 55} Appellee's argument that this court is precluded from considering appellant's appeal is meritless.

{¶ 56} Next we will consider whether appellant's claims are time-barred.

## III

### The Timeliness of Appellant's Motion

{¶ 57} There is no fixed time period within which a motion for relief under Civ.R. 60(B)(5) must be made. Such a motion must, however, be made within a "reasonable time." The trial court, in the exercise of its sound judgment, determines what constitutes a reasonable time based on the circumstances in the case. *In re Dissolution of Watson* (1983), 13 Ohio App.3d 344, 346, 13 OBR 424, 469 N.E.2d 876. The court must balance individual equity against considerations of judicial administration and stability of law. *Taylor v. Haven* (1993), 91 Ohio App.3d 846, 851, 633 N.E.2d 1197.

{¶ 58} Under Civ.R. 60(B)(5), courts must give greater flexibility to time requirements in cases of minors in order to protect their rights. *Ransome v. Lampman* (1995), 103 Ohio App.3d 8, 14, 658 N.E.2d 313. This is especially true when the minor is very young when the settlement occurs. Id.

{¶ 59} In *Ransome,* cited by both parties and the probate court, the court upheld an eight-year delay on behalf of a minor in an action to vacate the settlement of a paternity suit, while denying the mother's motion to vacate. The Second District Court of Appeals recognized that the child's best interests are paramount in determining whether relief from judgment is appropriate. It held that the child was quite young at the time of judgment and could not have been expected to have sought relief in the interim. Although the child was named in the original action, the court nonetheless found that her interests were not adequately represented because they may have conflicted with her mother's interests.

{¶ 60} Likewise, in *Taylor v. Haven,* 91 Ohio App.3d 846, 633 N.E.2d 1197, the father brought an action to be relieved from a paternity judgment ordering him to pay child support. He brought the action for relief over 12 years after the judgment. The Fifth District Court of Appeals stated that it was not prepared to hold a 12–year interval between a judgment and the request for relief to be per

se unreasonable because a number of factors should be considered, including the best interest of the child. See, also, *DaCosta v. Nemeth* (Feb. 9, 1998), 5th Dist. No. 97 CA 0077, 1998 WL 173215.

{¶ 61} In this case, the probate court found that the 12½-year delay between the settlement and the motion to vacate was unreasonable as a matter of law. It found that appellant's father had in his possession all the facts regarding the settlement in 1988 to pursue setting aside the judgment. The probate court also found that appellant obtained counsel in 1995 and could have brought suit then. The counsel allegedly representing appellant was also representing his father. At the time, appellant was approximately 11 years old. Based on this time frame, the probate court found that appellant had not timely sought relief.

{¶ 62} This court disagrees with the probate court regarding the timeliness of appellant's motion to vacate. The probate court improperly attributed appellant's father's knowledge and efforts (or lack thereof) to appellant.[7]

{¶ 63} Appellant cannot be held to the time frame in which his father, acting on his own behalf, may be held. The probate court also abused its discretion in failing to consider the fact that this suit was brought by a minor. All the cases cited by the court, except for *Ransome*, deal with suits by adults.[8] Consequently, appellant cannot be attributed with either a 12½ or a seven-year delay.[9]

{¶ 64} Appellant was appointed his current counsel in 1999, when he was 14 years old. His current counsel has diligently pursued his claims. The probate court abused its discretion in finding that appellant's motion was not timely filed.

{¶ 65} We now proceed to the merits of appellant's motion to vacate.

---

7. The probate court failed to consider that the purpose of R.C. 2111.18 is to protect minors against others whose interests may be adverse to theirs, especially their parents. See Section VI below. In this case, it is especially inappropriate to attribute appellant's father's action to him because the probate court found that appellant's father engaged in fraud to appellant's detriment.

8. In *Myers v. Myers* (Sept. 29, 1999), 9th Dist. No. 19267, 1999 WL 771834, a husband became aware that his alimony was unmodifiable but did not file his motion for relief from judgment until almost a year later. The trial court held that a nearly year-long lapse of time before filing for relief was not reasonable, and this court affirmed. In *In re Holman* (Sept. 3, 1998), 8th Dist. No. 73233, 1998 WL 564001, the movant claimed that he was induced into signing papers establishing paternity and child support obligations. The Eighth District Court of Appeals found that a seven-year period between his signing the paternity and support papers and bringing the motion to vacate was not reasonable.

9. Even if appellant could be held responsible for representation in 1995, seven years alone is not unreasonable as a matter of law when appellant incurred his injuries while still an infant. *Ransome,* supra, 103 Ohio App.3d 8, 658 N.E.2d 313.

IV

## ASSIGNMENT OF ERROR

The probate judge committed errors at law and abused his discretion, to movant-appellant's substantial prejudice, by rejecting the magistrate's findings and conclusions and denying the motion to vacate the order of April 22, 1988 approving the minor's settlement.

{¶ 66} In his sole assignment of error, appellant argues that the probate court abused its discretion in denying his motion to vacate the 1988 judgment approving the settlement made on his behalf. This court agrees.

{¶ 67} This court reviews a motion for relief from judgment under Civ.R. 60(B) under an abuse-of-discretion standard. *Hall v. Paragon Steakhouse* (July 26, 2000), 9th Dist. No. 99CA007443, 2000 WL 1026695. An abuse of discretion is more than an error of judgment. It involves "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying an abuse-of-discretion standard, this court may not substitute its judgment for that of the probate court. *S. Ohio Coal Co. v. Kidney* (1995), 100 Ohio App.3d 661, 667, 654 N.E.2d 1017.

{¶ 68} Appellant requests that the settlement approved on April 22, 1988, be vacated under Civ.R. 60(B)(5). Civ.R. 60(B) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Civ.R. 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.

{¶ 69} To prevail on a Civ.R. 60(B) motion, a party must meet three requirements:

(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and

where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken.

*GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus.

{¶ 70} All three requirements must be met for the motion to be granted. *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564.

{¶ 71} Appellant argues that the probate court abused its discretion in overruling Magistrate Poulos's findings that appellant was entitled to reopen the judgment of April 22, 1988. He claims it was error because he has met all the requirements of Civ.R. 60(B)(5).

{¶ 72} First, appellant claims that he has presented a meritorious claim that the Bronco in which he was injured was unreasonably dangerous and defectively designed. Appellee concedes this. Appellant has therefore met the first prong of establishing grounds to vacate under Civ.R. 60(B)(5).

{¶ 73} Appellant likewise contends that he has met the second and third requirements of (1) entitlement to relief under Civ.R. 60(B)(5) and (2) timeliness in requesting that the judgment be vacated. This court has already concluded that appellant has met the timeliness requirement. We will now address the last issue of whether appellant is entitled to relief under Civ.R. 60(B)(5) as a suit brought by a minor.

V

Standards for Relief Under Civ.R. 60(B)(5)

{¶ 74} Appellant argues that the probate court abused its discretion because it required a finding a fraud before vacating judgment. Appellant argues that a finding of fraud is not necessary to justify relief under Civ.R. 60(B)(5). Appellant argues that prejudicial irregularities in the proceedings also provide a ground to vacate.

{¶ 75} Civ.R. 60(B)(5) permits a court to vacate a judgment "on any other reason justifying relief from the judgment." Civ.R. 60(B) constitutes an attempt to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 248, 18 O.O.3d 442, 416 N.E.2d 605. Civ.R. 60(B) is remedial and is to be liberally applied. *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 453 N.E.2d 648. Interests are best served when judgment is rendered on the merits. *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 67, 18 OBR 96, 479 N.E.2d 879. Any doubt should be resolved in favor of the motion to accomplish that purpose. *Fed. Home Loan v. McCord* (Jan. 31, 1995),

10th Dist. No. 94APE05–747, 1995 WL 46196, citing *Moore,* 18 Ohio St.3d at 67, 18 OBR 96, 479 N.E.2d 879. When the interests of a minor are at stake, the courts are particularly solicitous of those interests. See Section VI below.

{¶ 76} Further, and importantly, fraud is not the only ground upon which relief can be granted under Civ.R. 60(B)(5). It is clearly one ground, and a very persuasive one, but not the only one. Civ.R. 60(B)(5) by its very terms allows relief from judgment for "any other reason justifying relief."

{¶ 77} Appellee argues that clear and convincing evidence is required to remove the presumption of a valid judgment. *In re Guardianship of Kelley* (1961), 172 Ohio St. 177, 15 O.O.2d 327, 174 N.E.2d 244. Judgments are indeed presumed valid, and courts must presume regularity where no transcript of the hearing has been made. *In re Estate of Alexander* (1993), 92 Ohio App.3d 190, 634 N.E.2d 670. However, Civ.R. 60 provides the means by which judgments presumed valid are overturned. *Advance Mtge. Corp. v. Novak* (1977), 53 Ohio App.2d 289, 291, 7 O.O.3d 338, 373 N.E.2d 400 ("Once the time for direct appeal has run, the only procedure to attack a judgment is pursuant to Civil Rule 60(B)"). Civ.R. 60(B)(5) allows a court to vacate a judgment for "any other reason justifying relief from judgment." These standards guide our determination of whether appellant is entitled to relief under Civ.R. 60(B)(5). This court will next consider the standards applicable to settlements made on behalf of minors.

## VI

### Settlements on Behalf of Minors

{¶ 78} R.C. 2111.18 governs the settlements of minors. It provides:

When personal injury * * * or damage or loss on account of personal injury * * * is caused to a ward [minor] by a wrongful act, neglect, or default that would entitle the ward [minor] to maintain an action and recover damages for the injury, damage, or loss, and when any ward is entitled to maintain an action for damages * * *, the guardian of the estate of the ward may adjust and settle the claim with the advise, approval, and consent of the probate court. * * * However, when it is proposed that the claim involved be settled for ten thousand dollars or less, the court, upon application by any person whom the court may authorize to receive and receipt for the settlement, may authorize the settlement without the appointment of a guardian * * *.

{¶ 79} R.C. 2111.18 binds a minor to a settlement even if his injuries later turn out to be worse than anticipated. *In re Guardianship of Kelley,* 172 Ohio St. 177, 15 O.O.2d 327, 174 N.E.2d 244. However, any settlement made on behalf of a minor must have been negotiated by a party acting in good faith and in a

proceeding that is not prejudicial to the minor. As the Ohio Supreme Court held in *Kelley* at syllabus:

> In the absence of a showing of prejudicial error in the proceedings or of fraud or collusion on the part of those involved, a settlement of an injured minor's claim for damages by his guardian in conformity with the provisions of Section 10507–19, General Code (now, Section 2111.18, Revised Code), is valid and binding on the minor and may not be set aside.

(Emphasis added.)

{¶ 80} *In re Guardianship of Kelley* establishes that either fraud or prejudicial error in the proceedings constitutes grounds to vacate. In *Kelley*, a young child was hit by a car and severely injured. Her mother settled the suit on her behalf. The minor later moved to reopen the case because the police report questioned liability and later that report proved to be false. The court refused to reopen the case because the judge was fully apprised of all the facts connected with the settlement and there was no fraud or collusion. Under *Kelley*, cited by both parties, either fraud or prejudicial procedural irregularities provided grounds to vacate.[10]

{¶ 81} Likewise, in *Brewer v. Akron Gen. Med. Ctr.* (Jan. 27, 1999), 9th Dist. No. 19068, 1999 WL 33382, this court held:

> The safeguards of R.C. 2111.18 are designed to insure that any settlement or release of a child's claims is, in fact, in the best interests of the child. Consequently, *only when a release "[is] done in [the child's] behalf, honestly, fairly, upon proper investigation and with the approval of the appropriate tribunal, shall [a release] be held as binding upon them as similar action[s] taken by adults."*

(Emphasis added.) Id., citing *Kelley*, 172 Ohio St. at 182–183, 15 O.O.2d 327, 174 N.E.2d 244, quoting *Thompson v. Maxwell Land Grant & Ry. Co.* (1897), 168 U.S. 451, 466, 18 S.Ct. 121, 42 L.Ed. 539, 545.

{¶ 82} This case also provides guidance regarding when a settlement is binding upon a minor. It requires fair dealing and protection of the child's best interest.

{¶ 83} Last, in *Carpenter v. Pontius* (1963), 119 Ohio App. 383, 28 O.O.2d 12, 200 N.E.2d 682, a ten-year-old was seriously injured when she was struck by a car when crossing the road. Her mother had settled the case in the probate court on her behalf for $500. This amount was the largest for which an action could be settled on behalf of a minor without the appointment of a guardian ad litem. When the minor became of age, she moved to set aside the judgment on

---

10. Appellee argues that appellant chose to pursue his claim for relief on the grounds of fraud and he therefore must prove fraud in order to prevail. This court does not find that appellant is bound to prove fraud when procedural irregularities also provide another ground to vacate.

the grounds that the driver's agent had induced her mother to agree to appear before the probate court of Stark County and sign applications and releases on the fraudulent representation that it was a mere formality in order to pay the outstanding medical bills. In fact, the papers settled the matter entirely on the minor's behalf. The mother had a fourth-grade education and could not read because she had no glasses.

{¶ 84} The Fifth District Court of Appeals reversed the trial court's finding that there was no fraud in the inducement to settle. It permitted the minor to bring the action. The court relied on *Kelley,* 172 Ohio St. 177, 15 O.O.2d 327, 174 N.E.2d 244.

{¶ 85} These cases provide the proper guidance for this court to determine whether relief from judgment is appropriate under Civ.R. 60(B)(5) in settlements involving minors. It allows for relief from judgment if there is fraud or procedural irregularities prejudicial to the minor's interest.

## VII

### Appellant's Entitlement to Relief from Judgment

{¶ 86} Appellant claims that there were sufficient procedural irregularities, a complete absence of full and fair disclosure, and substantial inequities so as to justify relief. He bases this claim on four alleged irregularities: (1) appellee's failure to disclose other payments to appellant's father in violation of Sup.R. 68(B), (2) the failure of appellee or its counsel to provide Dr. McLaughlin's letter to the magistrate, (3) the failure to protect appellant's settlement by disbursing his funds in violation of the magistrate's order, and (4) appellant's lack of meaningful representation at the hearing.

{¶ 87} This court will consider each of appellant's grounds for relief below.

A. Appellee's Failure to Disclose Payments for Appellant's Medical Bills and Property Damage

{¶ 88} Appellant argues that appellee's failure to disclose payments to his father for his medical bills and property damage in the application for settlement submitted to the magistrate violated Sup.R. 36.[11] Sup.R. 36 requires disclosure of any additional consideration paid to appellant's parents as a result of the accident causing injury to the minor. Magistrate Wertz also testified that the compensation being paid to the parents was important to him.

---

11. This is current Sup.R. 68.

{¶ 89} Appellee argues that these items need not be disclosed and cannot constitute a ground for vacating the judgment. Appellee claims that R.C. 2111.18 takes precedence over Sup.R. 36 and does not require the disclosure of claims not belonging to appellant. R.C. 2111.18 requires only discretionary disclosure of claims by the parents solely on account of loss of services of the minor.

{¶ 90} Neither party disputes that claims for appellant's medical bills and property damage belong solely to appellant's parents. There is evidence in the record that the magistrate was provided with the medical bills and was informed that these bills would be "handled separately and paid for." Consequently, the magistrate may have been unaware only of the reimbursement of $12,143.25 for property damage.

{¶ 91} This court finds that R.C. 2111.18 governs the disclosure requirements. Sup.R. 36 is only a rule of superintendence and does not create any rights. The Rules of Superintendence are "purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual[s]." *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 3 O.O.3d 286, 360 N.E.2d 735.

{¶ 92} R.C. 2111.18, however, does not conflict with Sup.R. 36. Therefore, Sup.R. 36 applies to the case at bar and requires the disclosure of additional consideration, including the amount of property damage and medical bills, in the application. Therefore, we find that the failure to disclose payment for the property damage (and possibly medical bills, though the bills were included in the file) may provide a basis to vacate the judgment.

B. The Manner in Which the Settlement was Tendered to Appellant's Father

{¶ 93} This court is also very disturbed by the manner in which the settlement was tendered on appellant's behalf. The magistrate's order required that "the estate of said minor in the possession of Ford Motor Co. in the sum of $10,000.00 dollars be deposited in the name of Adam Matyaszek with Bank One." The order further states that "[n]one of said funds, in whole or in part, shall be released by the depository until such time as said minor attained the age of majority."

{¶ 94} Instead of making out the check in appellant's name with restrictive endorsements as required by the magistrate's order, appellee made the check payable to appellant's father. This permitted appellant's father to disburse the funds in any manner he wished.

{¶ 95} Likewise, appellant's father also failed to comply with the magistrate's order to deposit the settlement in Bank One in appellant's name and restrict the release of the settlement to appellant alone when he reached the age of majority. There is nothing in the docket to indicate that the deposit was ever made. Appellant's total settlement is unaccounted for. One fact is certain, though—

appellant has received none of it. Neither party is faultless with regard to the manner in which the settlement was tendered. This court considers this a serious procedural irregularity extremely prejudicial to appellant.

C. Failure to Disclose Dr. McLaughlin's letter

{¶ 96} Appellant claims that appellee failed to provide Dr. McLaughlin's letter to the magistrate with the intent to deceive him regarding appellant's current medical condition. Appellant argues that the letter would have alerted the magistrate that appellant's injuries were far more serious than he had been led to believe and would have prompted him to appoint a guardian ad litem.

{¶ 97} Magistrate Wertz claimed that it was his usual procedure to approve a settlement without representation of the minor only when the injury was worth only between $1,500 and $3,000 and was really not even a soft-tissue injury. He claimed, too, that it was his practice to satisfy himself that the infant had, in fact, recovered from his injuries.

{¶ 98} The magistrate also testified that Dr. McLaughlin's letter would have been of particular interest to him. He stated that he "would have had some concern probably to appoint a guardian ad litem to make sure the appropriate interests were represented" if this information and the problems in the Matyaszek household had been presented to him.

{¶ 99} Appellee argues that the magistrate's practice was to request the discharge summary only in cases of injury to an infant and that this discharge summary was in fact presented to him. Appellee also argues that Dr. McLaughlin's letter is not material because it does not provide any information that was not provided by Dr. Hlavin, appellant's treating physician at the hospital.[12] Consequently, the magistrate was fully apprised of appellant's current medical condition by (1) Dr. Hlavin's discharge summary, (2) appellant's father's disclosures regarding appellant's current condition, and (3) the magistrate's own observations of appellant at the hearing.

{¶ 100} Former Sup.R. 37 states that the magistrate may obtain the current medical condition of appellant from his examining physician and current Sup.R. 68 requires him to obtain it. These Superintendence Rules make it clear that the magistrate must appropriately inquire about appellant's current medical condition. Appellant's current medical condition was especially important because it is completely evident to this court that appellant's injuries, even at the time of the settlement hearing ten months after the accident, could by no means be consid-

---

12. Appellee argues that Dr. Hlavin's summary is much more detailed regarding the nature and scope of his treatment and that Dr. McLaughlin's letter does not contradict Dr. Hlavin's summary.

ered trivial. The magistrate properly stated that any type of injury, even a soft-tissue injury, would have prompted him to appoint a guardian ad litem.

{¶ 101} This court is very concerned about the failure of either party or appellee's attorney to make disclosures about appellant's current health to the magistrate. We are confident that the magistrate, as he testified himself, would have appointed a guardian ad litem had the extent of appellant's injuries even been hinted at. Instead, the magistrate approved a settlement for nuisance value without any representation for appellant for injuries that any reasonable person would conclude were of more than nuisance value.

{¶ 102} This court does not find Dr. McLaughlin's letter to be of "minuscule" value as did the probate court. Dr. McLaughlin's letter states that he was the family physician and therefore he was in a superior position to inform the court of appellant's health decline resulting from the accident. Further, his letter specifically stated that it was his intent to inform appellee about appellant's "residual" health issues, that is, those arising months after the accident when the scope of his injuries were far more clear.

{¶ 103} Dr. Hlavin's discharge summary stating that appellant's prognosis was "excellent" gives the impression that he would recover completely. Dr. McLaughlin's report gives a far different impression, especially with his longer association with the family and his more recent contact with appellant.

{¶ 104} Even if the letter does not contradict Dr. Hlavin's initial prognosis, it would have provided notice to the magistrate that appellant had lingering problems and had not recovered fully, so that a settlement at that time was appropriate. This court views the failure of appellee, its attorneys, or appellant[13] to appraise the magistrate regarding appellant's lingering health issues as a gross procedural irregularity that again was highly prejudicial to appellant.[14]

---

13. Appellant's father may claim that he believed appellant had recovered. He made representations to that effect on two separate occasions. However, had he disclosed to the magistrate any part of appellant's course of treatment, the magistrate would have concluded that appellant had suffered a sufficient injury that he would not have permitted a settlement without the appointment of a guardian ad litem.

14. This court makes no finding as to whether failure to provide the letter to the magistrate rises to the level of fraud. In the proceedings below, it is unclear whether appellee's attorneys had been provided with the letter or not. Resolution of this issue is not relevant to our analysis, because one fact is clear and that is that the letter was never given to the magistrate. Further, we are aware that our review of the probate court's findings of fact is made under an abuse-of-discretion standard. We are not substituting our judgment for that of the probate court. We are applying the proper standard of looking to the prejudicial effect on appellant rather than on whether fraud was perpetrated on the magistrate.

## D. Lack of Meaningful Representation for Appellant

{¶ 105} The probate court found that appellant's interests were represented by his father. Based on the above-noted procedural irregularities, it would be difficult to conclude that appellant's father was representing his interests. Further, R.C. 2111.18 recognizes the reality that parents are not the proper parties to represent their children, because their interests often conflict with the child's. Magistrate Wertz likewise recognized this reality when he stated that parents often lose sight of whose claim is being settled. Further, based on the statements the father may have made at the hearing, appellant's current condition was not accurately disclosed to the magistrate. This court cannot conclude that appellant was represented by his father.[15]

{¶ 106} This court also views with concern, in light of all the other circumstances, the fact that this matter was settled at the very limits permitted without the automatic appointment of a guardian ad litem required under R.C. 2111.18. This fact alone would not provide grounds to vacate, but it adds weight to the other serious procedural irregularities that occurred, and that could not have occurred, had a single penny more been given in settlement. Further, the obvious severity of the injury based on the length of the hospital stay, the fact that much of that hospital stay was spent in the intensive care unit, the fact that the injury was a head injury, and the fact that just the hospital bills alone exceeded the settlement all create a strong presumption of serious procedural irregularity solely because the amount of the settlement was at the limit permitted without the appointment of a guardian ad litem.

## E. Analysis of the Probate Court's Findings

{¶ 107} Based on the above-stated facts, the probate court found that appellant was not entitled to relief under Civ.R. 60(B)(5) because he had not proved by clear and convincing evidence that appellee's counsel perpetrated a fraud upon the court. The court further found that any fraud that occurred was perpetrated by appellant's father alone. The court found that appellant was bound by his father's representations to the magistrate about his current medical condition whether they were fraudulent or not.

{¶ 108} This court finds that the probate court abused its discretion by improperly focusing on the conduct of the parties and their attorneys and not on the procedural irregularities and their prejudicial impact on appellant. The probate court refused to set aside the judgment unless it could find by clear and

---

**15.** Appellant was obviously not represented by appellee or its attorneys. Appellee and its counsel's duties were solely to the court.

convincing evidence that either appellee or its counsel perpetrated a fraud upon the court.

{¶ 109} As set forth above, fraud is not the only grounds for relief under Civ.R. 60(B)(5). *Bolivar v. Bolivar* (Oct. 17, 1985), 8th Dist. No 49606, 1985 WL 8127. Civ.R. 60(B)(5) arises from the "inherent power of a court to relieve a person from the unjust operation of a judgment." *Caruso–Ciresi, Inc.,* 5 Ohio St.3d at 66, 5 OBR 120, 448 N.E.2d 1365. Therefore, the probate court's inquiry was not limited to fraud. If the court could find prejudicial error in the proceedings that was detrimental to appellant's interests, then the judgment could be set aside. As shown above, there is abundant evidence of procedural irregularities prejudicial to appellant. The probate court abused its discretion in failing to vacate the judgment on the grounds of procedural irregularities prejudicial to appellant.

{¶ 110} The probate court also abused its discretion in failing to consider the fact that appellant was a very young minor when these proceedings occurred. It is undoubtedly true that R.C. 2111.18 binds a minor to a settlement even if his injuries later turn out to be worse than anticipated. However, for settlements to be binding on a minor, R.C. 2111.18 requires that the minor's interests be considered and protected. *In re Guardianship of Kelley,* 172 Ohio St. at 181, 15 O.O.2d 327, 174 N.E.2d 244.

{¶ 111} In this case, it is clear to this court that no one was protecting appellant's interest. The probate court's finding that appellant's father had the duty to protect his interests and that appellant is bound by his father's actions is incorrect. As shown above, parents are not always the proper parties to protect their children's interests because their own interests often conflict with those of their children. See *Guardianship of Muehrcke,* 8th Dist. No. 81353, 2003-Ohio-176, 2003 WL 132422. The procedures provided in R.C. 2111.18 recognize this reality and provide for appointment of a guardian ad litem who will protect the minor's interests. The provision permitting settlement of claims of $10,000 or less recognizes that some injuries are so negligible that a guardian ad litem is cost-prohibitive and unnecessary. This is certainly not the case here. Appellant's injuries from the start were not negligible.

{¶ 112} Furthermore, this court is left with the distinct belief that appellant's father did not act in his best interest during the settlement hearing by the representations he may have made to the magistrate regarding his son's recovery and by violating the magistrate's order regarding how the settlement proceeds were to be set aside for appellant. Even the probate court concluded that any fraud perpetrated upon the court came from appellant's father. Also, the fact that the settlement was at the limit permitted without requiring independent representation creates the impression that representation for appellant was not desired by either party.

{¶ 113} Finally, neither party presented sufficient evidence to the magistrate so that he could ensure that appellant's interests were protected. The magistrate himself testified that he believed that appellant's interests had not been represented. In conclusion, it is entirely evident that appellant had no meaningful representation at the settlement hearing.

{¶ 114} A minor's interests are paramount in a settlement made on his behalf. When those interests are not protected in circumstances leaving a firm belief that an injustice has been done, relief is warranted. This court is left with the definite belief that a wrong has been done to appellant. We think the Ohio Supreme Court summed it up best:

> A careful examination of this record, coupled with the rather unsatisfactory allegations of fraud, leads to much more than a suspicion that the court entering the decree was not as careful as might be desired, and the further suspicion that the guardian *ad litem* had not discharged his full duty. * * * [W]e think the dictates of substantial justice require that the demurrer should be overruled, that the interested defendants be required to answer, and that a better opportunity will be thereby afforded to do substantial justice between all parties interested.

*Bennett v. Fleming* (1922), 105 Ohio St. 352, 365–366, 137 N.E. 900.

{¶ 115} We are of the firm opinion that justice was not done in this case for appellant. He is entitled to have his day in court where his interests are represented. The probate court abused its discretion in denying him relief from judgment under the facts of this case. Appellant's sole assignment of error is sustained.

## VIII

{¶ 116} This court finds that the probate court abused its discretion in denying appellant's motion to vacate judgment. The probate court did not properly place appellant's interests as the paramount concern. The probate court did not consider the prejudicial effect the procedural irregularities had on appellant's interests. For the foregoing reasons, the decision of the probate court is reversed and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BOYLE, J., concurs in judgment only.

BATCHELDER, J., dissents.

BATCHELDER, Judge, dissenting.

{¶ 117} Respectfully, I dissent from the majority decision. In my view, the lead opinion presents a new conception of Civ.R. 60(B)(5).

{¶ 118} In this case, the magistrate allegedly observed appellant at the hearing and inquired of his father to ascertain appellant's medical condition, approved the settlement, and ordered the settlement money to be paid to appellant's interest. However, the magistrate did not require any bond to be posted to protect appellant, nor did he have any method in place to ensure that the settlement money was in fact paid to appellant. Last, the magistrate did not appoint a guardian ad litem to ensure that appellant's interests were protected as contemplated by R.C. Chapter 2111. Therefore, it is apparent that appellant's interests were not adequately protected at the settlement hearing by the magistrate.

{¶ 119} This failure to protect appellant's interests, however, should not be attributed to appellee. Appellee had no obligation to protect appellant. Appellee had no duty to provide the magistrate with medical information regarding appellant or to protect his settlement proceeds. Furthermore, the lead opinion does not find that appellee engaged in any type of fraud. In effect, however, the lead opinion requires appellee to ensure that appellant's interests are protected or else face the possibility that a court-approved settlement will be reopened decades later. Appellee obtained a full release, approved by the probate court, and paid over the settlement funds. Under the majority's approach to Civ.R. 60(B)(5), appellee's judgment would not be considered final until appellant reached the age of majority and the statute of limitations had expired for appellant's claim. This position is inconsistent with the principle of the finality of judgments. See *In re Guardianship of Kelley* (1961), 172 Ohio St. 177, 181, 15 O.O.2d 327, 174 N.E.2d 244.

{¶ 120} In this case, any error in the proceedings must be placed firmly within the responsibility of the magistrate. This is a very compelling case, which probably should be addressed by the legislature after extensive hearings. The protection of a minor's interests should be by statute and may require appointment of counsel. It is not a matter for this court to remedy on these facts.