DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made: *Page 2 
 {¶ 1} Defendant-Appellant Richard Wachter has appealed from the judgment of the Summit County Court of Common Pleas, Probate Division, which declared that certain bank accounts belonged to the estate of Barbara Kelly. This Court reverses.
 I {¶ 2} The decedent herein, Barbara Kelly, was a member of the May Associates Federal Credit Union ("the Credit Union"). At the time of her death, the decedent held seven accounts with the Credit Union. All of these accounts were held under her member number, 5003. Two of these accounts were IRA accounts and are not addressed in this action. The remaining five accounts held funds in the amount of $65,682.88 at the time of the decedent's death. At her death, the decedent was survived by her daughter, Appellee Janice Kelly, and her nephew, Appellant.
 {¶ 3} Testimony below revealed that Appellant executed a "Share Account Card and Agreement" ("SACA") form with the Credit Union on July 5, 2003. Due to the nature of this matter, we are compelled to describe the SACA. This form has boxes and lines by which an account owner or owners provide personal identifying information and the nature of the ownership of the account (individual, joint with survivorship, or joint without survivorship). On one side of the form ("the front") there is a subheading stating "Member Application and Ownership Information." This front side of the form has spaces to fill in the member's name, address, and other personal information. This front side of the form also includes *Page 3 
a space for the member's credit union number. In the instant matter, this front side of the SACA is entirely blank except for the member number 5003.
 {¶ 4} The SACA form also is perforated. Below the perforation on this front side there is a subtitle "Share Account Agreement" ("SAA"). The SAA consists of provisions numbered 1 through 6 on the front of the SACA and provisions numbered 7 through 12 on its reverse side. These provisions constitute default provisions if certain items on the SACA form are not completed.
 {¶ 5} On the reverse side of the SACA form, at the top and placed above the default provisions numbered 7 through 12, is a section entitled "Account Ownership," containing three boxes. These boxes permit a member to designate the account as an individual account, a joint account with survivorship, or a joint account without survivorship. In the instant matter, these boxes are empty. In addition, this reverse side has spaces for any joint owner to fill in his/her personal information. There is partial information on this portion of the SACA, including Appellant's address, phone number, social security number, and date of birth. Moreover, this reverse side of the SACA form has a place for the individuals filling out the form to place their signatures. Herein, the form was signed by Richard L. Wachter on July 5, 2003 and by Barbara A. Kelly on July 23, 2003.
 {¶ 6} Directly above these signature lines, under the heading "Authorization," is a disclaimer which notes that by signing the document the parties' agree to the SAA. As noted above, the SAA begins with default *Page 4 
provisions 1 through 6 on the front of the SACA and continues under the signature lines with default provisions 7 through 12.
 {¶ 7} As noted above, Appellant signed the SACA on July 5, 2003. Unaccompanied by anyone, the decedent signed the SACA on July 23, 2003. The decedent then passed away on August 17, 2003. Following Barbara's death, Appellant removed all of the funds from the non-IRA accounts. Specifically, Appellant asserted that he was entitled to these funds as each of these accounts was a survivorship account and that he has a survivorship interest in these non-IRA accounts.
 {¶ 8} As a result of this withdrawal, Appellee filed a concealment action against Appellant as the executor of Barbara's estate. Thereafter, Appellee modified her complaint and the matter proceeded as a declaratory action. Both parties moved for summary judgment in the trial court, asserting that no genuine issues of material fact remained. The trial court agreed with Appellee and awarded the estate the entire amount contained in Barbara's accounts. Appellant has timely appealed the trial court's judgment, raising one assignment of error for review.
 II Assignment of Error "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO JANICE KELLY AND DENYING SUMMARY JUDGMENT TO RICHARD WACHTER, BY FINDING, AS A MATTER OF LAW, THAT THE NON-IRA ACCOUNTS OF DECEDENT BARBARA KELLY, DEPOSITED WITH MAY *Page 5 
ASSOCIATES FEDERAL CREDIT UNION, WERE NOT IN SURVIVORSHIP WITH RICHARD WACHTER."
 {¶ 9} In his sole assignment of error, Appellant has asserted that the trial court erred in granting summary judgment to Appellee. Specifically, Appellant has argued that the trial court improperly determined that the accounts at issue were not survivorship accounts. This Court finds merit in Appellant's assigned error.
 {¶ 10} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 11} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt (1996), *Page 6 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 12} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 13} Pursuant to Civ.R. 56(C):
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 14} At issue in the current matter is the effect of the SAC A signed by Appellant and the decedent. In the instant matter, it is undisputed that the following provision was contained in the Authorization subsection of the SACA signed by the decedent. "I/we agree to the terms and conditions of the Share Account Agreement on the reverse side[.]" Moreover, it is undisputed that the SAA states as follows: "Unless otherwise stated on the Account Card, a multiple party account is an account with rights of survivorship[.]" *Page 7 
 {¶ 15} From these above provisions, Appellant has argued that he is entitled to the full amount contained in each of the decedent's non-IRA accounts. Appellee has countered this argument in several fashions.
 {¶ 16} First, Appellee has argued that the SAA is located below a perforated line on the SACA. Appellee has argued that there is no evidence that this Agreement was physically attached to the SACA when the decedent signed the form, roughly 18 days after Appellant signed the form. Appellee is correct that the record is devoid of evidence on this matter. However, "parties to contracts are presumed to have read and understood them and a signatory is bound by a contract that he or she willingly signed." Preferred Capital, Inc. v. Power Engineering Group,Inc., 112 Ohio St.3d 429, 2007-Ohio-257, at ¶ 10, citing Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, 14; DeCamp v. Hamma (1876), 29 Ohio St. 467, 471-472. As the document that the decedent signed reflects her agreement with the terms contained in the SAA, and since there is no evidence that the decedent's signature was made against her will, it is presumed that the decedent read and understood the terms in that agreement. Accordingly, it is presumed that the decedent in the instant matter understood that by signing SACA that she was creating a joint and survivorship account. As the form contained clear survivorship language, it is "conclusive evidence of the depositor's intention to transfer to the survivor the balance remaining in the account at the depositor's death." Wright v. Bloom (1994), 69 Ohio St.3d 596, 607. *Page 8 
 {¶ 17} Appellee has also asserted that there is no evidence that the SACA created a multiple party account. Appellee has offered no authority to support this position. Both Appellant and the decedent signed the SACA. Accordingly, no other conclusion can be drawn other than concluding that the account is a multiple party account.
 {¶ 18} This conclusion, however, does not end our inquiry. We must next determine to which accounts the SACA applies, if any. Upon review, we cannot conclude that the record is sufficient to determine this issue.
 {¶ 19} We find the instant set of facts to be analogous to the TransOhio account at issue in Wright. In Wright, one of the three accounts at issue did not have survivorship language which appeared on the ownership form of the account. The TransOhio account, however, dictated that it was "governed by `Account Rules and Regulations,' which were not made part of the record." Wright, 69 Ohio St.3d at 597. The Supreme Court, therefore, remanded the matter to the probate court to consider these regulations to determine the distribution of that account. Id. at 607. Unlike Wright, we have concluded that survivorship language does exist. However, similar to Wright, without evidence in the record of the the Credit Union's banks rules and regulations, we cannot determine to which accounts this survivorship language applies.
 {¶ 20} Specifically, the assistant manager of the Credit Union, Madeline Smith, testified that a new SACA would "change the previous card." Ms. Smith, however, did not explain what effect the previous card had or whether multiple *Page 9 
previous cards existed. This ambiguity was further demonstrated when Mark Brunty, the President of the Credit Union, testified as follows:
 "A. This [Account Ownership] form here just covers the main share account, which would be consisted of the 5003. (sic.)
 "Q. So anything, any account that had 5003 followed by a dash?
 "A. No.
 "Q. No?
 "A. Just, it would be like the 00 account, the main share account. * * * Just a regular savings account. It's a share account.
 "Q. And so would each specific account then require a separate form of that nature to determine its ownership?
 "A. Correct."
Mr. Brunty then equivocated stating that "To my knowledge, I would think you would need other forms for [the other accounts], but I am not sure. We would need to check with Madeline." Effectively, Mr. Brunty asserted that Ms. Smith, his assistant manager, would have knowledge of the Credit Union's rules and regulations regarding the requirements to change the ownership form of accounts at the Credit Union. Ms. Smith, however, offered no testimony about the Credit Union's rules and regulations regarding the requirements to change the ownership form of an account.
 {¶ 21} Based upon the above, the trial court concluded incorrectly that the SAA was not binding upon the decedent. Additionally, the trial court had before it insufficient evidence to determine the effect of the SACA submitted by Appellant. As such, the trial court could not properly grant summary judgment because a *Page 10 
genuine issue of material fact remained regarding the effect of the SACA. Accordingly, Appellant's sole assignment of error has merit.
 III {¶ 22} Appellant's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Probate Division, is reversed and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 11 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
BETH WHITMORE
FOR THE COURT
SLABY, P. J. CONCURS